F. W. ANDERSON *v.* S. W. LACHS.

1. ASSIGNMENT FOR CREDITORS. *Fraud in law. Assignee's powers. Sales.*
   An assignment for a creditor is valid notwithstanding the fact that it empowers the assignee to sell the property conveyed in the usual course of business. *Mattison* v. *Judd, ante,* 99, cited.

2. SAME. *Choses in action. Power to sell.*
   Authority in the assignee to collect or sell at public or private sale the notes and accounts assigned, is not more liable to abuse than the power to compound with creditors, and does not vitiate the deed.

3. SAME. *Reservation. Surplus.*
   Reservation to the grantor of the surplus remaining after payment of the debt secured by the assignment, without providing for other debts, does not render the instrument fraudulent *per se* as to creditors omitted.

4. SAME. *Fraud in fact. Antecedent agreement.*
   The fact that an agreement existed between the debtor and the creditor, that the former would execute the assignment if at any time it became necessary for the latter's protection, does not constitute fraud in fact.

5. SAME. *Release of debt.*
   A verbal agreement by the creditor, outside the conveyance, to accept it in satisfaction of the debt and release the grantor from personal liability, does not render the assignment void.

6. SAME. *Purchaser in good faith.*
   In such case, where the secured creditor in good faith releases his debt in consideration of the execution of the deed, the assignee is a purchaser for value, and is not bound by the grantor's fraud.

7. SUPREME COURT. *Bill of exceptions. Practice.*
   In order that this court may review the exclusion of evidence by the court below, the bill of exceptions must state the facts and set out the ruling complained of in an intelligible form.

APPEAL from the Circuit Court of Issaquena County.

Hon. B. F. TRIMBLE, Judge.

The appellee, trustee in the assignment described in the opinion, brought this action of replevin against the appellant, a sheriff, who, by virtue of writs of attachment, sued out by creditors of the grantor, had taken from the possession of the trustee the property which he held under the conveyance.

*Nugent & McWillie*, for the appellant.

1. The assignment was fraudulent in law. It was executed for a pre-existing debt by an insolvent, and directs the trustee to sell accounts, notes, and judgments at public or private sale. Power to sell the stock of goods in the usual course of trade implies sales upon credit. These provisions would defeat the proper intent of an assignment, and deprive the beneficiary of part of the trust fund. *Barney* v. *Griffin*, 2 N. Y. 365; *Nicholson* v. *Leavitt*, 6 N. Y. 510; *Hart* v. *Crane*, 7 Paige, 37; Bump Fraud. Con. 480. The instrument cannot be sustained in part only, but must stand or fall as a whole. *Dunham* v. *Waterman*, 17 N. Y. 9; *Wilson* v. *Robertson*, 21 N. Y. 587; *Rapalee* v. *Stewart*, 27 N. Y. 310; *Bowen* v. *Parkhurst*, 24 Ill. 257; *Norton* v. *Kearney*, 10 Wis. 443. The deed thus executed requires all the surplus, after paying the preferred creditor, to be delivered to the assignor; and this, in connection with the other stipulations, is clearly fraudulent. The trustee held merely to shield the grantor. *Goodrich* v. *Downs*, 6 Hill (N. Y.), 438; *Harman* v. *Hoskins*, 56 Miss. 142; Burrill on Assignments, §§ 206, 208; Bump Fraud. Con. 398, 400.

2. The transaction was fraudulent in fact. The grantor, anticipating attacks from his creditors, had agreed with the beneficiary, his relative, to convey him the property if danger became apparent, and under that contract to defeat creditors the assignment was subsequently made. A benefit was reserved to the grantor outside the deed, and inconsistent with its terms, in that stipulation of the secret contract that the debtor was to be released and the creditor was to look to the property alone. *Robins* v. *Embry*, S. & M. Ch. 207; *Spaulding* v. *Strang*, 38 N. Y. 9; *Conkling* v. *Carson*, 11 Ill. 503; *Butler* v. *Jaffray*, 12 Ind. 504; *Marsh* v. *Bennett*, 5. McLean,

117; *Livermore* v. *Jenckes*, 21 How. (U. S.) 126; *Lukins* v. *Aird*, 6 Wall. 78. In this connection, the circular letter was competent, and it was an error to regard the beneficiary, who was a mere holder of an old debt, and parted with nothing, as entitled to the protection of a *bona fide* purchaser. His position was not altered by the assignment. *Pope* v. *Pope*, 40 Miss. 516; *Thompson* v. *Furr*, 57 Miss. 478. Exclusion of this letter must cause a reversal.

*G. Gordon Adam*, for the appellee.

1. The circular letter was properly excluded, for the reason that the beneficiary, who was a purchaser for value, was not shown to have knowledge thereof, and, for the further reason, that the contents of the letter were not disclosed or shown to be relevant. No actual fraud is proved. Stipulating that the beneficiary should release his debt and look solely to the property, is consistent with the deed, and, so far from making it fraudulent, furnishes valuable consideration for its support. If it was legal to execute the trust deed, the previous agreement for its execution was not fraudulent, but was merely a contract to do what the parties had a right to contract for, although other creditors were thereby defeated.

2. Provisions in the deed, concerning the manner of selling the goods and of dealing with the notes and accounts, do not render it fraudulent upon its face. Assignees are presumed to exercise reasonable care and forethought, and are under the control of the Chancery Court. The intent of the deed cannot be defeated by such provisions. Language similar to that concerning the goods was held not to vitiate the assignment in the case of *Mattison* v. *Judd*, *ante*, 99; and a deed with provisions as to notes and accounts, like the stipulation in this instrument, was approved in the case of *Craft* v. *Bloom*, *ante*, 69. Bump Fraud. Con. 412. The stipulation that the surplus, after paying the secured creditor, shall be returned to the grantor, is a mere expression of that which the law would provide without such a declaration, and does not vitiate the transfer. Bump Fraud. Con. 397; Burrill on Assignments, § 207.

COOPER, J., delivered the opinion of the court.

It is urged that the court below should have decided that

the deed of assignment was void on its face ; first, because there is an express reservation therein to the assignor, of the surplus remaining after the payment of the debt to Speed, no provision being made for the payment of other debts due by the assignor ; and, second, because authority is conferred on the trustee to sell the property conveyed " in the usual course of trade," and " to collect or sell at public or private sale the notes and accounts " assigned. The decided weight of authority is that the reservation to the assignor of the surplus remaining after the payment of the debts provided for does not *per se* invalidate the deed, the reason being that the legal effect of the instrument is the same whether such provision is or is not made. Burrill on Assignments, § 207. In the case of *Mattison* v. *Judd*, *ante*, 99, we held that when the deed conferred power on the trustee to sell in the usual course of business or course of trade, power to sell on credit was not thereby given, but that such language only gave authority to sell in small quantities according to the usual custom for cash instead of at public auction or in bulk. The authority given to the trustee to sell the choses in action, while unusual, does not inevitably or certainly tend to the injury of creditors. On the contrary, it may be that under some circumstances it would be of decided advantage that such course should be pursued. It is argued that trustees, protected by such authority, may, in strict conformity with the letter of the conveyance, sacrifice the choses in action, and greatly impair the value of the trust estate. So, under the power to sell the goods and other personal property, equal injury may be done. No power sufficient to administer the trusts can be given which may not be abused by the faithless ; but it is not to be presumed that trustees, who are required to act honestly and prudently, will fraudulently abuse the powers conferred. If they do, they are personally liable to creditors, and are always subject to the control of the Chancery Court. The power conferred in this case is analogous to, and not more susceptible to abuse than power to compound with debtors, and such power does not avoid the conveyance. *White* v. *Monsarrat*, 18 B. Mon. 809 ; *Price* v. *DeFord*, 18 Md. 489 ; *Carlton* v. *Baldwin*, 22 Texas, 724 ; *Watkins* v. *Wallace*, 19 Mich. 57

The appellant also contends that .the deed is fraudulent in fact, because of an antecedent agreement between the assignor and Speed (the creditor), that, if at any time it should be necessary to execute the assignment for Speed's protection, it should be done.   The act itself of making the assignment being lawful, it is difficult to apprehend how a previous promise to do it can make it unlawful.   If the debtor Hillyer could at any time lawfully execute the conveyance by which his property is devoted to the debt due to Speed, how are other creditors injured by the fact that he had previously promised on certain contingencies so to do ?   It is not admissible from the fact alone, that such precedent agreement was made, to infer the existence of a scheme devised for the purpose of entrapping others into sales of goods to the debtor, which goods were then to be by him appropriated to the payment of the debt to Speed. The law would not tolerate the consummation of such a scheme, but it does not in the absence of proof presume its existence. The objection that there is a reservation of a benefit to the debtor, because it is shown by evidence *aliunde* the deed that Speed accepted the assignment in discharge of the debt, is equally untenable.   The deed professes to devote the property to the payment of certain debts due to the beneficiary, and its effect is neither limited nor extended by the contract of the debtor that he should be released from personal liability on the debt.   If this contract had appeared on the face of the deed, no other creditors could by any possibility have been injured thereby, and it is not more hurtful to them by reason of the fact that it existed only in parol.

It is also assigned for error that the court below excluded, when offered in evidence, a circular letter addressed by Hillyer to his creditors a short time before the execution of the deed.   What the contents of the letter were is left to conjecture, the only statement relative thereto contained in the record being that it was offered for the purpose of proving Hillyer's financial condition at that time, and was excluded by the court because the admissions of Hillyer were not receivable in evidence against Speed, the plaintiff.   We are unable to say from this perfunctory statement that the court erred in excluding the testimony.   We are satisfied from the evidence that Speed in

good faith released his debt against Hillyer in consideration of the execution of the deed ; and such being the case the trustee became a purchaser for value, and was not bound by any fraud of the assignor, if any existed.        *Judgment affirmed.*

———◆———

Jᴏʜɴ MᴄCᴜᴛᴄʜᴇɴ *ʋ.* O. M. Bʟᴀɴᴛᴏɴ ᴇᴛ ᴀʟ.

Iɴᴊᴜɴᴄᴛɪᴏɴ. *Nuisance. Pernicious grass.*

> Whether a tenant in fee can be enjoined from planting pernicious grass on his land by the owners of adjacent farms which it will injure, *quære;* but the injunction against the alleged nuisance will not be sustained at the final hearing if the testimony is conflicting as to the character and effects of the grass, and leaves in doubt the result of its introduction into agriculture.

Aᴘᴘᴇᴀʟ from the Chancery Court of Washington County. Hon. W. G. Pʜᴇʟᴘs, Chancellor.

*W. P. & J. B. Harris*, for the appellant.

According to the allegations of the bill, the grass is not of the class of objects which takes its character as a nuisance from its locality, as, for instance, a powder-mill; but it is characterized as a public evil in agricultural districts wherever and by whomsoever introduced. It follows from the theory of the complainants that all farmers may treat its introduction as an indictable offence, and have recourse to an injunction. The evidence, however, shows that for grazing and forage the grass is valuable, and is likely to supply these much-needed adjuncts to the agriculture of the State. So strong is the proof upon this point that it gives rise in any rational mind to a desire to see the product tried effectually and under favorable auspices. Occupying this attitude, to justify interference by public authority with its culture, its introduction should be clearly shown to be attended with inevitable and irreparable evil. The evidence upon this point is conflicting. Private persons, who enjoin an alleged public nuisance which is not such *per se*, must show that they have sustained, and will continue to sustain, injury differing in kind, not in degree, from that affecting