——IN THE——

# SUPREME COURT OF MISSISSIPPI

——AT THE——

## OCTOBER TERM, 1891.

| 69 | 1 |
| 69 | 336 |
| 69 | 1 |
| 72 | 710 |

MARKS, ROTHENBERG & CO. ET AL. *v.* N. H. & R. L. BRADLEY ET AL.

1. ASSIGNMENT FOR CREDITORS. *Contemporaneous act. Fraud. Creditors not injured.*

Where, just before the execution by a firm of an assignment for creditors, its agent, intrusted with a large sum to pay a creditor, makes an arrangement with the latter by which the agent's wife is substituted as debtor and retains the money, the firm being released, there is nothing in the transaction to invalidate the assignment, or of which creditors can complain.

2. VOLUNTARY ASSIGNMENT. *Partnership assets to pay individual debts.*

A voluntary assignment by an insolvent partnership which devotes partnership assets to the payment of individual debts of a partner is fraudulent and void as to firm creditors.

3. SAME. *Reservation of benefit by partner.*

The reservation by a partner of money which legally belongs to the firm, and which in general terms the assignment purports to convey, will avoid the assignment.

4. FRAUDULENT CONVEYANCE. *Intent of grantor.*

The *intent* of the grantor which will avoid a voluntary assignment, need not be an actual, corrupt intent. The law imputes a fraudulent intent

69 MISS.—1                                                    1

if the thing done is unlawful, and naturally results in hindering, delaying and defrauding creditors. And this rule applies equally where the matter or act that is unlawful is shown by extrinsic evidence, as when it appears on the face of the deed.

5. SAME.  *Preference of individual debts.  Mistake of law.*

Accordingly, a preference in such assignment in favor of the tax-collector for the amount of taxes on lands owned by the partners individually, will avoid the assignment, notwithstanding the firm had previously written the tax-collector to draw on it for the amount, and supposed, as he had done this, that he was looking to the firm for the money.

6. INSURANCE.  *Partnership.  Building owned by partner.  Proceeds of policy.*

The separate ownership by a partner of a building insured by the firm in its own name, the premiums being paid by it, does not entitle such partner to the proceeds of the policy in case of loss. The money collected on the policy belongs to the firm.

7. ASSIGNMENT.  *Reservation by partner.  Mistake of law.*

And if the firm, while the money from such insurance is in its possession, executes a general voluntary assignment, the retention of the money, or a part thereof, by a partner, will avoid the assignment, although the partners acted under the belief that he, as owner of the building, had a right to the insurance money as his individual property.

8. VOLUNTARY ASSIGNMENT.  *Preference of fictitious debts.*

In a general voluntary assignment, the preference by an insolvent grantor of a fictitious debt, will render the assignment fraudulent and void *in toto* as to creditors, notwithstanding the grantor, through mistake of law, supposed he owed the debt. Whether this would be so if a debt not really due were unintentionally preferred, through honest mistake of fact, is not decided.

FROM the chancery court of Madison county.
HON. H. C. CONN, Chancellor.

The opinion states the facts.

*Brame & Alexander*, for appellants.

1. The proceeds of the insurance belonged to the firm. The partner had no right to the money because he held the legal title of the building. Insurance is a personal contract,

and the money is not the proceeds of the property. The non-insured, whether mortgagee, creditor, owner, or other person, has no claim to it, either legal or equitable. *Bernheim* v. *Beer*, 56 Miss., 149; *Carpenter* v. *Ins. Co.*, 16 Pet., 495; *Nippes' Appeal*, 75 Pa. St., 472; *Smith* v. *Ratcliff*, 66 Miss., 683. Accordingly, the withholding from the assignee of the insurance money was a reservation that avoids the assignment.

2. The preference of taxes on the lands of the partners was a devotion of firm assets by an insolvent firm for the benefit of a partner, and was a fraud on partnership creditors. Such a transaction is everywhere condemned as fraudulent. The cases in our court relied on by appellee were not cases of voluntary assignments for creditors by insolvents. See 2 Bigelow on Fraud, 320; Burrill on Assignments, 275, 276; Bump on Fraud. Con., 381.

3. It cannot avail the assignors to show an actual honest intent. The intent of the statute of frauds is not a personal or corrupt intent, but has a technical meaning. Where the necessary effect of an act is to delay creditors, the law imputes a fraudulent intent. 2 Bigelow on Fraud, 83; Wait's Fraud. Con., 9. The question of actual or personal intent arises only in regard to acts naturally innocent. 2 Bigelow on Fraud, 371, 374, 381. The fact that the act deemed fraudulent does not appear on the face of the deed, but appears in evidence, does not change this rule. *Ib.*, 387. This case does not involve the matter of an unintentional or accidental insertion of a debt not really due, or the law which would govern in such a case.

*Nugent & McWillie*, on the same side.

1. There was no debt due to Harding, either as tax-collector or otherwise. Taxes on land are not debts, but merely charges upon the property. Cooley on Taxation, 13; Code 1880, § 470. If it was a debt, it was not the debt of the partnership. Harding had neither paid nor undertaken to pay

the taxes on these lands. The firm had refused to pay his draft for the taxes, and the lands were advertised for sale. The sheriff, in collecting the taxes, is a mere ministerial officer, and has no right to collect otherwise than in money. If the taxes constituted a debt, and the firm had, in fact, undertaken to pay it, and if Harding looked to the firm, the preference was still one that avoids the assignment, for the debt remained that of the individual members of the firm. The application of firm assets to pay individual debts avoids the assignment.

·. We have no fault to find with the decisions of our court relied on by appellee. They were cases of *sales* or transactions in due course of business. Here there was a voluntary assignment by an insolvent partnership. It is true, the equity of firm creditors is derivative from the equity of the partners, and that the equity is upheld only in cases of administration of the assets of a partnership; but, in an assignment like this, the partners, by their own act, undertake to administer their assets with reference to their insolvency, and the equities of firm creditors must be respected. In addition to the text-books, see *Wilson* v. *Robertson,* 19 How. Pr., 355; 61 *Ib.,* 73; 2 Keyes, 102; 2 Daley, 42; 3 Biss., 125; 60 Wis., 418, 622.

The taxes could not be preferred in favor of the separate partners. Clearly, then, a preference could not be given to a stranger for the same debt. *Goddard* v. *Hapgood,* 60 Am. Dec. (Vt.), 275.

2. The insurance money belonged to the firm. It effected the insurance, paid the premiums, made proof of loss, and collected the money. It deposited the money in the bank as its own and checked it out. The fact that the firm had deceived the insurance company cannot make the money that of the partner. The contract of insurance was entirely independent of ownership. *Bernheim* v. *Beer,* 56 Miss., 149; *Smith* v. *Ratcliff,* 66 *Ib.,* 683.

The retention of this money, which purported to pass by the assignment, will avoid it, regardless of the actual intent

or honest belief of the grantors.    Intention is not the subject
of inquiry.    *Baum* v. *Pierce*, 67 Miss., 700.

*H. Peyton* and *E. E. Baldwin,* on the same side.

*Calhoon & Green,* for appellees.

This court will not disturb the finding of the chancellor
that there was no fraud in fact.    The facts do not warrant
the application of the doctrine of constructive fraud.    Con-
structive fraud arises where the contradiction between the
evidence and the act of the grantor is so palpable that he
should not be permitted to deny or explain.    It has no appli-
cation where the ownership of money or goods is a matter of
doubt, and the appropriation is made in good faith through a
mistake of law.    Even where fictitious debts are preferred,
this court declines to vacate an assignment, but leaves it as a
badge of fraud, unless the preference was deliberate and in-
tentional.    *Craft* v. *Bloom,* 59 Miss., 69.

The retention of the insurance money by N. H. & R. L.
Bradley was neither actually nor constructively fraudulent.
The insurance company waived the question of ownership,
and before the assignment was made the firm had paid the
insurance money to its owner.    Both partners, so far as the
record shows, were solvent.    Creditors of the firm had no in-
terest except to insist that all the partnership property went
to the assignee.    Creditors can have no higher right than the
firm.    *Schmidlapp* v. *Currie,* 55 Miss., 597; *Fulton* v. *Hughes,*
63 *Ib.,* 65; *Hyman* v. *Stadler,* 63 *Ib.,* 362; *Hanover Bank* v.
*Klein,* 64 *Ib.,* 141.

The question of the lack of insurable interest had been
waived by the company, and, as between the partners them-
selves, the money belonged to N. H. Bradley.    His equitable
claim was therefore complete, and, if so, the firm owed him
the money and might well pay it.    Title will not be inquired
into with strictness in insurance policies.    *Phenix Ins. Co.* v.

*Bowdre,* 67 Miss., 620; *Liverpool, etc., Ins. Co.* v. *McGuire,* 52 *Ib.,* 227.

The above reasoning, as to constructive fraud, applies to the Harding debt. Before contemplating the assignment the firm had become bound to pay this debt, and hence preferred it. At any rate, it believed the debt was due. Harding had extended credit to the firm by allowing the time for payment of the taxes to pass. He had a right to look to the firm, and did do so. The fact that he had another remedy, which he subsequently resorted to, could not make the preference fraudulent.

The intent of the statute of frauds is a question of fact. It makes no difference in what form the question may be presented. Thus, whether an instrument by its terms appropriates the property to the use of the debtor is a question of fact which the *court* passes upon. It is a finding of fact although by the court; and where such finding is based upon language of a written instrument it cannot be contradicted, and for this reason fraud so arising is termed fraud in law. In truth, it is fraud in fact. See *Rowley* v. *Rice,* 11 Met., 333; *Jones* v. *Richardson,* 10 *Ib.,* 481; *Moody* v. *Wright,* 13 *Ib.,* 17.

Where the intent must be shown by *extrinsic* evidence, it must be found by the jury from the facts. If the language of the instrument is doubtful, the court will presume the fact in favor of the validity of the deed. *Richardson* v. *Marqueze,* 59 Miss., 80; 64 Pa. St., 352. However found, fraudulent intent is a question of fact. The leading case on the doctrine is *Clow* v. *Woods,* 5 Serg. & R., 275. See also *McBroom* v. *Rives,* 1 Stew. (Ala.), 79; *Shackelford* v. *Bank,* 22 *Ib.,* 238; *Harris* v. *Sumner,* 2 Pick., 133; *Murray* v. *Riggs,* 15 Johns., 571; 9 *Ib.,* 339; 2 Starkie Ev., 617, note *s*; 15 Conn., 26; 7 Cowen, 304; Jones Chat. Mort., §§ 320–327.

Argued orally by *C. H. Alexander* and *T. A. McWillie,* for appellants, and by *M. Green,* for appellees.

COOPER, J., delivered the opinion of the court.

On the twenty-fifth day of February, 1891, N. H. & R. L. Bradley, a commercial firm, made an assignment of the partnership assets for the payment of partnership creditors, with preferences. The conveyance purports to convey all the partnership property. The present bill was exhibited by certain creditors of the firm, attacking the assignment as fraudulent. These facts are relied upon to invalidate it : Some weeks prior to the assignment the firm was indebted to James, Lawson & Gordon in about the sum of $4,000. These creditors held as collateral security certain notes and accounts, but were pressing for other security. In this condition of affairs it was agreed that Mrs. A. H. Bradley should execute her note to James, Lawson & Gordon, and secure the same by a mortgage of her farm, and that the firm of N. H. & R. L. Bradley should indorse the note. This was intended only as a temporary security, and Mrs. Bradley and her property were to be released as soon as other financial arrangements could be made by the firm. A few weeks after this the store of N. H. & R. L. Bradley, at Flora, with its contents, was destroyed by fire. The property was insured, and some $3,000 was collected from the insurance policies; and the firm, failing to make any satisfactory arrangements, determined to make an assignment.

About the twentieth of February R. L. Bradley drew from the bank in which it had been deposited the insurance money, and sent by express to A. H. Bradley the sum of $3,090. A. H. Bradley, acting for his wife, went to James, Lawson & Gordon with the money and arranged with this firm for the discharge of the firm of N. H. & R. L. Bradley by agreeing that his wife would assume the payment of the debt absolutely, and that her property, which had been mortgaged, should stand as security therefor. James, Lawson & Gordon thereupon surrendered to the firm of N. H. & R. L. Bradley the collaterals which they had held for the debt, erased the names of these parties from the note of Mrs. A. H. Bradley, and agreed to

look solely to her for the payment of the debt.    This trans-
action furnishes one of the grounds upon which the validity
of the deed is assailed.

Of the debts mentioned in the assignment, among the pre-
ferred claims, is one to R. J. Harding for about $294.    The
evidence discloses that the greater part of this claim arose in
this way : The members of the firm of N. H. & R. L. Brad-
ley owned certain lands and personal property, upon which
taxes for the year 1890 were due and unpaid.    Some weeks
before the assignment was made the firm wrote to Mr. Hard-
ing, who was the sheriff and tax-collector of Hinds county,
directing him to draw upon it for these taxes.    In accordance
with this request, the sheriff drew upon the firm and attached
the tax receipts to the draft.    The draft was presented and
payment refused, and thereupon the draft and receipts were
returned to Harding, who destroyed them and advertised the
property for sale.    It does not appear that the assignors knew
that the lands had been so advertised, or that there remained
sufficient time for the sheriff to do so.    The supposed debt
to Harding arising from these facts was, as we have stated,
among those preferred.

Another attack arises from these facts : The store at Flora,
in which the firm transacted business, was the individual
property of N. H. Bradley.    It was insured in the name of
the firm and the premiums paid by it.    In making proofs of
loss it was stated that the firm owned the store, but before
the policy was paid the adjuster of the insurance company
discovered the fact that the title was in N. H. Bradley.
The company, however, waived defense on this ground, and
paid the amount of the policy to the firm.    A portion of the
insurance money arising from the policy on the store was used
in discharging the debt to James, Lawson & Gordon, but
there remained of it about $290, which was in hand at the
time of the execution of the assignment.    Because of the
ownership of the building by him, this fund was treated as
the property of N. H. Bradley, and the money remaining on

hand arising from the policy was handed to him by R. L. Bradley, and was by N. H. Bradley kept and not delivered to the assignee. These are the principal facts upon which the assignment is sought to be annulled.

It is sufficient to say, in reference to the transaction between the firm of James, Lawson & Gordon and Mrs. A. H. Bradley, that nothing appears from which an inference of fraud is fairly to be drawn. The money was applied in the discharge of a debt due by the firm, and the fact that it was not actually paid over to James, Lawson & Gordon, and by them returned to Mrs. Bradley, is immaterial. The result is the same, and since the thing done was lawful, no injury could accrue to any creditor by reason of the method pursued.

The effect of the preference given to R. J. Harding for the payment of the taxes upon the property of the members of the firm, and of the retention by N. H. Bradley of a part of the insurance money, may be considered together; they are of like character, being in the one case an appropriation of firm assets to the payment of the debts of the individual members, and in the other a retention by one of the assignors of a part of the firm assets.

It is argued by the appellees' counsel that no objection can be taken to the assignment on its face; that, so far as thereby appears, no fraud is shown nor any thing condemned by law; that the objectionable facts are shown by evidence *dehors* the instrument; and that, under such circumstances, the question is whether there was a fraudulent intent in fact on the part of the assignors, which is to be determined by a consideration of all the circumstances under which the assignment was made; and that an honest mistake of law or of fact so shown ought not to vitiate the deed. In other words, that where the court is not confined to a mere inspection and construction of the deed, its validity is to be determined by the existence or non-existence of a fraudulent purpose on the part of the grantors, and that a merely unlawful provision disclosed by evidence *aliunde* the deed should not affect it as

a whole, but that it should be upheld save as to such pro-
vision.

Two questions are presented by the inquiry.   First, whether
the intent which is the subject of investigation is the personal
intent of the assignor or the technical intent of the statute
against fraudulent conveyances; and, second, whether the
intent, if found as matter of fact by evidence outside the
deed, is in any respect different from the intent discovered
by an inspection of the deed itself.

Mr. Bigelow, in his work. on Frauds, vol. 2, page 374, in
discussing the question whether it is necessary to show a
personal fraudulent purpose of the debtor to invalidate a
conveyance the necessary effect of which is to hinder, delay,
or defraud creditors, says: " The truth appears to be that to
have taken the statute literally would in most cases have
nullified the law, and accordingly, in all the great range and
number of cases relating to the statutes against fraudulent
conveyances there is hardly to be found, apart from one or
two well-defined situations, a single specific authority which
would be generally considered as of weight for the proposi-
tion that the 'intent' of the statute is a personal intent.   It
is true, indeed, that proof of such intent will always make a
case under the statute; and it is every-day practice for the
courts to receive evidence for and against such intent.   But
in most cases the effect, whatever the purpose, of evidence of
a personal intention to defraud is only to strengthen a case
that, if sustained, might have been made without such
evidence."

Mr. Burrill, on the other hand, contends that the true rule
of construction is such that, " in order to bring an assign-
ment by a debtor within the statute of fraudulent convey-
ances (at least in its original and unabridged form, and in
reference to its professed title) on the ground of an intent to
*hinder and delay,* there must be an intent to delay and hinder
actually entertained by the debtor, and not only an actual
intent, but a covinous and fraudulent one.   But there is a

class of cases establishing a very different rule of construction of the statute in some states, and constituting there the law of the land."

In this state, in a line of decisions beginning with the *Farmers' Bank* v. *Douglass,* 11 S. & M., 469, it has uniformly been held that where, upon the face of an instrument, an unlawful purpose appears, the law will impute to the grantor a fraudulent intent and avoid the deed, upon the maxim that one must be held to have intended the consequences of an act done by him. It is admitted by counsel for appellees that if, upon the face of the instrument, it appeared that the assignors had devoted the partnership property to the payment of their individual debts, or that a part of the property purporting to have been conveyed by it was in fact reserved, the assignment would be annulled. But it is argued that this result would follow because the law would impute, under such circumstances, to the assignors, from the face of the instrument, a covinous and fraudulent intent. In other words, that the personal intent is that which, in all cases, must be discovered, and that it must be a fraudulent one to avoid the deed. We do not so understand the decisions. An act otherwise lawful may be invalidated because of the fraudulent personal intent of the party; but an act in and of itself unlawful, cannot be made lawful because of the absence of an actual fraudulent intent on the part of the actor. Where the intent is a fraudulent one, and the consequences of the act injurious, the fraudulent intent avoids it; where the act is unlawful, though the actual fraudulent intent is absent, it is avoided because it is unlawful.

*Nightingale* v. *Harris,* 6 R. I., 321, the case often referred to as supporting the proposition that the fraud which will vitiate an assignment must be the intentional fraud of the assignor, has been practically overruled in the more recent case of *Gardner* v. *Bank,* 13 R. I., 155.

It is evident that the nature and effect of an act cannot be changed or controlled by the character of the evidence by

which it is proved. An unlawful act proved by the face of the deed, is merely an unlawful act; an unlawful purpose proved by extraneous evidence, is not the less unlawful. The question is not how the fact shall be proved, but it is, what effect does it have when proved? And so are the authorities. *Southard* v. *Benner*, 72 N. Y., 424; *Gere v. Murray*, 6 Minn., 305; *Sturdivant* v. *Davis*, Ired., Law, 65; *Ranlett* v. *Blodgett*, 17 N. H., 298; *Gardner* v. *McEwen*, 19 N. Y., 123; *Coolidge* v. *Melvin*, 42 N. H., 510; *Clow* v. *Woods*, 5 S. & R., 275; *Gibson* v. *Love*, 4 Fla., 217; *Putnam* v. *Osgood*, 52 N. H., 148; *Orton* v. *Orton*, 7 Or., 478.

It might be sufficient for the disposition of this case to say that the reservation by N. H. Bradley of a part of the proceeds of the policy of insurance, which was the property of the firm, was sufficient to avoid the assignment, because it was an act done at the time and as part of the assignment, the necessary consequence of which was to prevent the assignment from operating upon the property according to its professed purpose. But we are also of opinion that the preference to Harding for the taxes due upon the property of individual members of the firm was a reservation of a benefit to them in the assigned property, and would alone have the same effect.

In truth, the assignors owed Harding nothing, and unless it be that this preference was a reservation of a benefit to the members of the firm, it was the preferring of a fictitious debt, and that also would avoid the deed.

Bump on Fraudulent Conveyances, page 376, states the law to be "that an appropriation of the property to the payment of debts not owing by the assignor, nor contracted on his account, or for a larger sum than is due, to the prejudice of his creditors, is evidence of fraud. This will not, however, make the assignment void, unless the assignee participates in the fraud. No creditor is concluded by taking under the assignment from impeaching any of the debts attempted to be secured by it, and showing fraud and collusion

in such of them as may stand in his way, and the payment of which would operate to his prejudice. The impeached claim is extinguished by the fraud, and the share that would otherwise have been appropriated to its payment sinks into the residuum, for the benefit of those who are entitled to the residuum by the terms of the deed." For this statement of the law he cites *McIntosh* v. *Corner*, 33 Md., 598; *Hempstead* v. *Johnston*, 18 Ark., 123; *Hardcastle* v. *Fisher*, 24 Mo., 70.; *Harris* v. *DeGraffenreid*, 11 Ired., 89; *Pinneo* v. *Hart*, 30 Mo., 561; *Nightingale* v. *Harris*, 6 R. I., 321; *Starr* v. *Dugan*, 22 Md., 58; *Woodward* v. *Marshall*, 22 Pick., 468.

Mr. Waite, in his work on Fraudulent Conveyances, § 228, makes a similar statement, relying upon some of these cases, as does, also, Burrill on Assignment, § 355, citing in addition the cases from Alabama. The Missouri court holds in accordance with the text of these writers. Maryland and Massachusetts have statutes on the subject by which their decisions seem to be controlled. We have been unable to find the statutes of these states, but in *Woodward* v. *Marshall*, 22 Pick., 468, it is held that " fraud on the part of an assignor, not participated in by the assignee, would not defeat the rights of the creditors to have the trust fund administered according to the statute," the court saying it is "not one of the grounds mentioned in the statute for invalidating the discharge of the debtor." In Arkansas and Alabama it is also held that an assignment, though fraudulently made, is not void unless the assignee participated in the fraud. *Hill* v. *Shrygley*, 51 Ark., 56; *Trust* v. *Davidson*, 90 Ala., 359.

*Harris* v. *DeGraffenreid*, 11 Iredell, Law, was a controversy between a creditor and a *bona fide* purchaser from a trustee holding under a fraudulent deed, the fraud not appearing on the face of the instrument, and it was held that the purchaser got title. This case consists with our own decision of *Covington* v. *Mayers*, 62 Miss., 730.

In *Stone* v. *Marshall*, 7 Jones, Law (N. C.), it was held that the insertion of a fictitious debt avoided the assignment, upon

the ground that the debts intended to be paid by the assignment formed the consideration for the conveyance, and that where a part of the consideration of a deed is against law the whole is void.

*Stone* v. *Marshall* was overruled in *Morris* v. *Pearson*, 79 N. C., 253, upon the ground that the debts mentioned in an assignment for the payment of which it is made do not form the consideration of the conveyance, but that the nominal consideration recited in the instrument is its real consideration. On the other hand, it is held in Pennsylvania, New York, Kansas, Tennessee, and probably Kentucky, that the insertion of a simulated claim avoids the deed. *Irwin* v. *Keen*, 3 Wharton, 347; *Bank* v. *Wood*, 45 Hun., 411; *Jacobs* v. *Remsen*, 36 N. Y., 668; *Livermore* v. *Northrop*, 44 N. Y., 107; *Kayser* v. *Heavenrich*, 5 Kansas, 324; *Lockhard* v. *Brodie*, 1 Tenn. Ch., 384; *Peacock* v. *Tompkins*, Meigs, 317; *Gibbs* v. *Thompson*, 7 Humph., 179; *Lehmer* v. *Herr*, 1 Duvall, 360.

The conflict in these authorities springs somewhat from the different points of view in which they are considered by the courts. If the assignee in the deed of assignment for the benefit of creditors is a purchaser for value, or, if because of the debts due to creditors for the payment of which the assignment is made, their rights only are to be considered, it would seem that fraud of the grantor, not participated in or known by them, should not affect the validity of the conveyance, and if one or more of the claims to be paid are fraudulent, the assignment should be upheld in favor of those whose debts are just. But with us the assignee is considered as a volunteer. He pays nothing for the conveyance, nor is the condition of any creditor changed by reason of its execution. If the conveyance is upheld, their claims are to be paid out of the property assigned, but if it is avoided they occupy no worse position than before. They lose nothing by reason of the attempt to prefer them. The whole effect of annulling an assignment is to disappoint the will of the assignor, which ought not to be effectuated if his purpose is an unlawful one.

The conveyance is in any event valid so far as he is con-cerned, and cannot be assailed by him.  But creditors who do not assent to it ought not to be precluded from pursuing their legal remedy, and subjecting the property assigned as the property of their debtor, unless some right superior to theirs has intervened.  Assignments with preferences do not commend themselves to the courts, because of the inequality produced among a class of persons each having an equal equity to a participation in the estate of the debtor.  But since the law, by reason of the right of the debtor to control his own property, permits him to prefer one creditor to another, this inequality alone is not sufficient to condemn an assign-ment.  Where, however, the power is exercised, it must be confined within legal limits, and no infringement upon the rights of creditors can be permitted.  It is to be noted that the authorities cited by the text-writers in support of the proposition that the insertion of a simulated claim does not avoid the deed, are by courts in states in which either by statute or by decision it is held that the fraud of the assignor alone does not avoid the deed, only North Carolina and Mis-souri holding that the assignee is not a *bona fide* purchaser, and yet that a simulated claim is not ground of invalidating the assignment.  We cannot assent to the correctness of these decisions.

A creditor whose claim is not preferred, should not be subjected to the additional burden of disproving the validity of preferred claims recognized by the assignor before he can reach the property or participate in its proceeds.  The law gives and must preserve to a creditor the right of proceeding against his debtor to subject his property to the debt.  He is not concerned about the claims of other creditors, and their existence interposes no obstacle to his subjecting the debtor's estate.  The mere interposition by the debtor of a false claim, to which priority of right is by his act given over a real creditor, operates necessarily to hinder and delay them, and probably to defraud them.  They must, in any event,

turn aside from the pursuit of the debtor or his estate and litigate with the fictitious creditor, and are thereby hindered and delayed, or must submit to the unlawful appropriation by the debtor of a part of his estate to such simulated debt, by which they would be defrauded.

An insolvent debtor, for the reason that he is the owner of his property notwithstanding his indebtedness, may appropriate his estate to the payment of any just debts due by him, and, since each creditor is justly entitled to the whole sum due him, no legal wrong is done to any creditor by the payment in full of the demands of others to the exclusion of his own, if the debtor's estate is insufficient to pay all he owes. It is upon this principle that the right of an insolvent to make a preferential assignment rests. But the debtor may not pass beyond the limit fixed by law, and apply his estate to the benefit of himself or of others whom he does not owe, to the injury of creditors; for this is, in and of itself, a fraud upon them regardless of the secret purpose of the debtor. Much of the apparent inconsistency in judicial utterances arises from the fact that the word "fraud" is sometimes used as though applicable only to an act done with a corrupt or covinous intent, whereas in legal terminology it has a much broader meaning and application. Voluntary conveyances have been in very many cases held to be fraudulent as against creditors where there was an absence of any other evidence of a fraudulent intent on the part of the grantor than the fact and character of the conveyance and his insolvency. No case can be found in which the absence of a personal fraudulent purpose has given validity to a voluntary conveyance by an insolvent debtor of his whole estate, and it would be manifestly immaterial whether the character of the conveyance appeared on its face or should be proved to be voluntary by evidence *dehors* the instrument.

It is unnecessary to express any opinion as to what would be the effect, where by honest mistake of facts reasonably occurring, the debtor has unintentionally included as a rec-

ognized claim against him one having no existence. It will be time enough to consider of that when presented. In any event the courts could not relieve against such mistake save under such circumstances as would warrant reformation of the instrument according to the practice in chancery. Authority, however, is not wanting for the proposition that where a mistake is made in such an assignment, which under other circumstances would be corrected by a court of equity, the court will not interfere to correct it because of the strong equity of the general creditors, but will leave it to stand or fall as executed by the party. *Hunt* v. *Rousmaniere*, 1 Pet., 1; *Anderson* v. *Tydings*, 8 Md., 427.

*Reversed and remanded.*