HYMAN HILLER ET AL. *v.* I. N. ELLIS, ASSIGNEE, ET AL.

1. USURY.   *Reserving interest in advance.*

Reserving in advance out of a loan interest at the highest legal rate is usurious.   *Polkinghorn* v. *Hendricks*, 61 Miss., 366.

2. SAME.   *Interest on promise to loan.   Additional charge.   Code 1892, § 2348.*

When interest is charged on a mere promise to lend money in the future and is carried into the loan afterwards made, and the borrower is, in addition, charged the highest legal rate on the money from the time advanced, the transaction is usurious, and the whole interest is forfeited under § 2348, code 1892; and, if paid, the debtor may recover it by suit.

3. ASSIGNMENT FOR CREDITORS.   *When fraudulent.   Usury.*

Intentionally preferring a usurious debt in a voluntary assignment by an insolvent is fraudulent as to creditors, and avoids the instrument *in toto.*   So held in this case in respect to a general voluntary assignment, although it empowered the assignee to correct any mistakes in the amounts due creditors.   *Wetter* v. *Dinkens*, 70 Miss., 835, cited.

4. SAME. *Good faith. Debtor's acts strictly construed.*

Where an insolvent makes an assignment, and especially one with preferences, the utmost good faith to creditors is required. His acts are to be tried by strict rules, and, to be valid, the instrument, as written, must be susceptible of complete execution without depriving creditors of their legal rights. *Marks* v. *Bradley*, 69 Miss., 1; *Selleck* v. *Pollock*, *Ib.*, 870, cited.

5. SAME. *Release by creditor. Bona fide purchaser. Notice.*

Where a bank is a preferred creditor for a usurious debt which renders an assignment void, the fact that on the execution of the instrument it gave the assignor a release from personal liability will not make the assignee, its cashier, who negotiated the loan and therefore had notice of the usury, a *bona fide* purchaser for the protection of such preference. *Anderson* v. *Lachs*, 59 Miss., 111, distinguished.

6. SAME. *Fraud of grantor. Notice to assignee; affects creditor.*

Where the assignee knows of the unlawful act of the grantor in executing the assignment, it cannot be maintained, though the preferred creditor may have paid value for the deed.

7. SAME. *Consideration. Release in aid of assignment. Effect.*

Where the assignment with preferences has already been determined upon without reference to a release, and the debtor is hopelessly insolvent, his release from personal liability by the preferred creditors, not for his benefit and not really in consideration of the assignment, but in aid of it and for the purpose merely of affording a consideration to uphold the deed for the benefit of the preferred creditors, does not make them purchasers for value.

8. SALE *Rescission. Fraud. Report of mercantile agency.*

Where a merchant, seeking to buy goods on credit, in response to a request for a statement as to his financial condition, says he is not then prepared to furnish it, but refers the seller to the reports of a mercantile agency, where, it turns out, he was greatly overrated, a sale made on the faith of such statement may be rescinded as fraudulent, and the seller can retake the goods from an assignee in a voluntary assignment made by the purchaser.

9. SAME. *Statements of financial condition. Buyer not connected therewith.*

But where the seller, not being referred by the purchaser to mercantile agencies, extends the credit on the faith of statements as to his financial condition appearing on the books of such agencies, purporting to have been made by the buyer, and there is no evi-

dence that such statements were in fact made by him, the seller cannot rescind because of the misleading effect of such statements.

FROM the chancery court of Copiah county.

HON. H. C. CONN, Chancellor.

The material facts, as found by the court from the record, are stated in the opinion. To this it may be added that the assignment construed in this case contains, among other things, the following provision: "To facilitate the execution of this trust, the said party of the first part (the assignor) has prepared a schedule, which is herewith filed, marked schedule B, and made part of this deed, showing all the liabilities of the said party of the first part, as required by § 124, code of Mississippi of 1892, which said schedule is intended to show the liabilities of the party of the first part, and the exact amount of them, and all of them; but, if by reason of inadvertence there be any mistake in omitting any of the liabilities of the said party of the first part from said schedule B, or errors in amounts thereof, then the said party of the first part hereby fully authorizes and empowers the said party of the second part (the assignee) to correct the same, and to that end, and to further facilitate the execution of this trust, does hereby constitute and appoint the said party of the second part his attorney in fact irrevocable, with full power and authority to do, transact and perform all acts, deeds, matters and things which may be necessary in the premises, as fully and completely as the said party of the first part might or could do if these presents had not been executed, hereby ratifying and confirming whatever the said attorney shall lawfully do or cause to be done in the premises."

*J. S. Sexton* and *R. P. Willing, Jr.,* for appellants.

1. The assignment was fraudulent in fact. Such a transaction cannot be allowed to stand while the decision of this court in *Selleck* v. *Pollock,* 69 Miss., 870, remains the law fixing the standard of integrity required in general assignments.

2. The assignment should be set aside *in toto*, because the debt preferred to the Merchants & Planters' Bank is usurious. *Wetter* v. *Dinkins*, 70 Miss., 835. That this debt is usurious, is manifest from a consideration of the facts.

3. The assignment cannot be upheld as to the bank and Mrs. Klotz on the ground that these parties released the assignor from personal liability. This was a mere attempt to circumvent the law and get the benefit of the principle announced in *Anderson* v. *Lachs*, 59 Miss., 111. The parties knew that Hiller was insolvent, and gave the release merely to make a consideration, and to protect themselves against his fraud.

*R. P. Willing, Jr.*, for appellants Marshall Field & Co., and J. Kyle & Co.

1. The goods sold by these appellants were obtained through Hiller's fraud, and they had the right to rescind the sales. *Klein* v. *Rector*, 57 Miss., 538.

2. The assignee is not a purchaser for value, and the goods may be recovered from him. *Frank* v. *Robinson*, 65 Miss., 162.

3. The false representations need not be made directly to the seller. It is sufficient if they are made to a mercantile agency through which they are communicated. 15 Am. & Eng. Enc. L., pp. 297, 298, and authorities cited; *Eaton* v. *Avery*, 83 N. Y., 31.

When asked by Marshall Field & Co. to make a statement of his financial condition, Hiller referred them to Dun's agency, saying he had previously made it a statement which could be relied on. The goods were sold on the faith of this statement, which was false.

In the purchase from Kyle & Co., nothing passed between them and Hiller in regard to his statements to the commercial agencies, but the goods were sold to him upon the faith of such statements, and the fraud was in the representation made by Hiller to the agencies for the purpose of getting a rating. The

legal aspect of both cases is the same. In both, the goods were obtained through fraud.

*R. N. Miller* and *George S. Dodds*, for appellees.

1. With the witnesses before him, the chancellor found that the goods sought to be retaken had not been fraudulently purchased, and we rely upon this finding. The evidence fails to show that the statements relied upon were given by Hiller to the commercial agency. The information upon which the rating was made was obtained, in large part, from other persons, and Hiller was not responsible for the same. As to this matter, also, the proof was conflicting, and the decree will not be disturbed.

2. The creditors seeking rescission cannot prevail, (1) because there was no fraud in the purchase of the goods; (2) because, admitting the fraud, the assignee is a *bona fide* purchaser. If Hiller's fraud were fully admitted, it could in no manner affect the rights of the assignee, because, at the time of the execution of the assignment, the bank and Mrs. Klotz each released Hiller from personal liability in consideration of being preferred. This makes them *bona fide* purchasers. *Craft* v. *Bloom*, 59 Miss., 69; *Anderson* v. *Lachs, Ib.*, 111; *Soule* v. *Shotwell*, 52 *Ib.*, 236.

3. As to the claim that the debt to the bank was in part usurious, the facts are, that the ten per cent. interest which was stipulated for in the note was taken out in advance; but this is explained by showing that Hiller previously went to the bank, and arranged to get the money, when the cashier informed him that he could have it, with the understanding that interest should be charged from that date. Hiller agreed to that, and left the money with the bank until he made the note. Counting the interest on the money during this time at six per cent. more than compensates for the slight excess that resulted from reserving the interest when the notes were executed.

4. If it be conceded that we are mistaken in assuming that

there was no usury in the debt to the bank, still the assignment will be upheld, because the record contains no intimation that Mrs. Klotz, when she released Hiller in consideration of the preference, had any notice of this usury.

Argued orally by *R. N. Miller*, for appellees.

COOPER, J., delivered the opinion of the court.

On the tenth day of October, 1893, Charles Hiller, an insolvent merchant, made a general assignment of his property to the appellee, Ellis, for the benefit of his creditors. Preferences were given to Messrs. Miller and Dodds, the attorneys by whom the instrument was prepared, for their fees, and, also, in the order named, to F. Dillard, for the sum of $250 and interest; to the Merchants & Planters' Bank of Hazelhurst, for the sum of five thousand dollars, and interest; to Mrs. Hannah Klotz, for the sum of five thousand five hundred dollars; to Hyman, Hiller & Co., for the sum of nine thousand one hundred dollars, and, after the payment of said sums, the assignee was directed to distribute any remaining funds to all other creditors *pro rata*. The assignee filed his petition in the chancery court of Copiah county, as required by law, and gave bond as receiver. Many creditors of Hiller, soon after the execution of the assignment, exhibited cross petitions against the assignee, seeking to vacate the assignment as fraudulent and void, on the grounds that it was made for the purpose and with the intent of defrauding creditors; that some of the preferred debts were simulated; that the debt to the Merchants & Planters' Bank was composed in part of usury, and upon other grounds not necessary to be stated. The firm of Marshall Field & Co., of Chicago, exhibited their cross petition, charging that among the assigned property was a lot of goods bought from them by the assignor, and for which the purchase price had not been paid; that Hiller procured the sale of said goods to be made to him on credit by falsely and fraudulently representing himself to

be solvent and the owner of a large amount of property, and by falsely and fraudulently understating and concealing the amount of his liabilities; that the assigned goods were in the hands of the assignee, and capable of identification. They prayed that the purchase of said goods by Hiller be declared fraudulent, and the goods returned to them. A like cross petition was exhibited by the firm of Kyle & Co. to recover certain goods they had sold to Hiller. It was admitted by the assignee that the goods mentioned in the cross petitions of Marshall Field & Co. and Kyle & Co., came to his hands, and were identified by the claimants, but the fraudulent purchases by Hiller were denied. Under agreement, they were sold, and the proceeds yet remain in the hands of the assignee, subject to the order of the court. On final hearing, the court found all the issues joined on the several cross petitions in favor of the assignee, and dismissed the petitions, and from the decree, the cross petitioners appeal.

In considering the questions presented for decision, it is only necessary to state such facts as are relevant to the points on which the cause turns. The record is voluminous, and contains much evidence not necessary to be stated in the view we take of the cause. One of the preferred debts, that due to the Merchants & Planters' Bank, is evidenced by five promissory notes, each for one thousand dollars, dated at different times, and which, when executed, the bank discounted at the rate of 10 per cent. per annum—*i. e.*, retained the interest as prepayment thereof at the full legal rate. Mr. Ellis, the cashier of the bank, and who is the assignee in the assignment, gives this explanation of the circumstances of the negotiation of the loan by Hiller and the execution and discount of the notes. Some time in January or February Hiller applied to the bank " and stated that he wanted to borrow four or five thousand dollars, and wanted to know when he could get it, and what security would be needed. I told him that he could get it. He said, however, he would not want it until later in the year ; and I told

him, to be sure of getting it, he would have to pay interest from that time. He stated the time he would want it, which was about the first of March, I think. We agreed upon the amount of security he was to give. I do not remember the amount of interest he was to pay. I do remember having told him we could not hold the money for him all that time and not charge him interest for it, and he agreed to pay interest at whatever rate was required. I think this was in January or February, and do not think he had any list of securities with him. The understanding was that he was to get up his collaterals, and also give Mrs. Klotz as security. There was no security furnished at that time, but the collaterals which he agreed to give were such as are usually given in such cases. I would have been at liberty, after that, to decline the loan unless satisfactory security had been furnished. . . There was no written contract entered into between the bank and Hiller with reference to the interest he was to pay when he first approached the bank to borrow money. I don't remember that the rate of interest which he agreed to pay from that date was mentioned, though I suppose, of course, it was, and do not think it could have been less than 10 per cent. . . I did not lay aside any specific money at that time in separate packages to save for Hiller, but I promised to let him have it. In making our arrangements we loan so much money, and no more, and we have to know what we are going to do with it. . . I made the discounts on the notes with a view of charging him and covering the interest from the time I promised to let him have the money. Mrs. Klotz was in Texas, and we had to send the notes over there for her signature." These facts, stated by the officer of the bank by whom the money was negotiated for by Hiller, are, in effect, agreed to be true by Hiller, who was examined as a witness in the cause, and they fix, beyond doubt, the usurious nature of the debt. As a matter of fact, interest was not charged on the amount Hiller applied to borrow from the date of the application, of which date

no memorial was made and which neither of the parties can fix except approximately. The bank did not then lend Hiller any amount, and no contract which obligated it so to do was entered into. The bank was not bound to lend, nor Hiller to borrow, any specific sum, for in truth no specified sum was applied for, Hiller stating only that he would need four or five thousand dollars. When and as the money was borrowed, no calculation of interest on the money from the date of the application to the dates of the respective notes was made, nor any amount reserved or included in the notes therefor. What was done was to reserve from the money loaned the full legal interest for the time intervening between the date and maturity of each note, and this was usury. *Bank* v. *Nolan*, 7 How. (Miss.), 508; *Hyde* v. *Finley*, 26 Miss., 468; *Polkinghorn* v. *Hendricks*, 61 *Ib.*, 366. Our statutes against usury would go for nothing if so simple a device as charging interest on a promise to lend money, and carrying such interest, in addition to full legal interest, into the note when the money is loaned could be successfully resorted to. Because of the usury thus reserved in the notes to the bank, all interest thereon was forfeited, and might, if paid, be recovered back by suit at law. Code 1892, § 2348.

What effect does the fact that this usurious interest was secured to be paid and preferred by the assignor have upon the deed of assignment? Is the assignment thereby annulled, or is the consequence only that the assignee shall withhold the payment of the forfeited interest? In *Wetter* v. *Dinkens*, 70 Miss., 835, the assignor preferred a debt as to which usurious interest had been reserved, and attempted to fix the amount to be paid as that of the principal and legal interest, and this we held he might lawfully do; but by error in calculation, ten dollars in excess of legal interest was stated as the sum due. The assignor had, however, by the terms of the assignment, provided that of the debts stated to be due in the instrument, the assignee should only pay the amounts really found to be due, and this was held to preserve the assignment.

There is great conflict of authority as to what effect the fact that a simulated, usurious or excessive debt is provided for or preferred will have upon the assignment. In some of the states, by statute or decision, the assignee is treated as a purchaser for value; in others, the courts separate the valid from the invalid debts, and uphold the assignment as to the valid debts it secures ; in others, this will be done if the invalid debt does not rest upon an unlawful, as distinguished from an insufficient, consideration. We need not now go into an examination of these decisions; they are noted and discussed in *Marks* v. *Bradley*, 69 Miss., 1.

Throughout all our decisions there runs the controlling rule that, in assignments by insolvents, and especially in preferential assignments, the utmost good faith to creditors must be observed; that the insolvent, claiming to act under the law, which, notwithstanding his insolvency, recognizes his dominion over his property as owner, must keep himself within the law, which not only recognizes, but controls, his conduct; that, while the law will not obstruct the exercise of the legal right to prefer one creditor over others of equal merit, it will try his action by strict rules, confine him to travel along a narrow path, and lend him no assisting hand if he departs therefrom. The assignment, as written, is the law for the administration of the insolvent's estate; neither the assignee nor the courts may add to or subtract therefrom, and, as written, it must be susceptible of complete execution, without depriving creditors of their legal rights, or it may not stand against their attack. *Richardson* v. *Stapleton*, 60 Miss., 97; *Marks* v. *Bradley*, 69 *Ib.*, 1; *Selleck* v. *Pollock*, *Ib.*, 870. Applying the principle of these cases, it follows that the preference given by the assignor to the usurious debt due to the bank annuls the deed. The assignee is, by the deed, directed and required to pay to the bank the debt and its usurious interest, and this he must do. He pays it, if at all, not as debtor, nor by virtue of the obligation springing from the contract between the assignor

and the bank, but by reason simply of the terms of the deed under which he holds. The deed is the law under which he acts, and *ita lex scripta est.* In the payment thus directed to be made, the estate of the assignor is to that extent diminished and prevented from being devoted to the demands of other creditors. But more than this results, for the payment, when made, creates *eo instanti* a right of action in the assignor to recover from the bank, not only the usury, but the whole interest reserved. The assignee may not sue, for it is not his money that has been paid; nor is the right thus arising a chose in action which passed by the assignment, for it did not exist when the assignment was made. The assignee, in paying the usurious debt, would be paying as the representative of the assignor. *Chapin* v. *Thomson*, 89 N. Y., 270. And the payment so made, though a voluntary one, would create a right of action in the assignor to recover the whole interest paid. Code 1892, § 2348. The legal effect of what the assignee was directed to do was a purchase by the assignee of a right of action for the assignor, at the expense of the fund which he professed to devote to the payment of his creditors. That this cannot lawfully be done we think is clear. In some of the states the statutes against usury simply declare a forfeiture of the usury, or of all the interest, but no provision is made, as with us, that the usurious interest, if paid, may be recovered back. In such states it has sometimes been held that, by providing for the payment of the debt in an assignment, the forfeiture is waived. These authorities are not applicable under our statute, under which actual payment is not a waiver.

At the time of the execution of the assignment, the Merchants & Planters' Bank and Mrs. Klotz, two of the preferred creditors, indorsed thereon a release to Hiller of their demands against him personally, in consideration of the provision made in the deed for the payment of their debts. It is now urged that, whatever may have been the fraudulent purpose of Hiller in executing the deed, the assignee is a purchaser for value

at least to the extent of holding the assigned property to an amount sufficient to pay these claims. This position is taken on the authority of *Anderson* v. *Lachs*, 59 Miss., 111. We think the principle announced in that case—*i. e.*, that when a creditor, in consideration of the assignment, releases the assignor from personal liability on the debt for the payment of which the assignment is made, the assignee is a purchaser for value, and not bound by the undisclosed fraud of the assignor—cannot apply on the facts disclosed by this record. Unquestionably, the bank which, in lending the money, reserving the usury, accepting the assignment and releasing Hiller, acted by and through its cashier, Ellis, who is the assignee in the deed, is chargeable with full notice of the unlawful act of the assignor. Mrs. Klotz stands in no better attitude. The assignee, Mr. Ellis, had knowledge of the unlawful act, and, though Mrs. Klotz had paid value for the deed, he would not have been a *bona fide* purchaser, for, to make one a *bona fide* purchaser, he must take not only for value, but without notice. The purpose of Hiller, the assignor, and the purpose of Ellis, the assignee, to devote the estate of Hiller to the payment of the usurious debt to the bank were identical. It does not matter that, as to Ellis, the assignee, and probably that as to Hiller, the assignor, this purpose involved no moral turpitude. In law many things are dealt with as fraudulent because of their results as against creditors, as to which moral delinquency may not be predicated. If the purpose of the assignor and assignee be to do a thing not recognized by the law as valid, the instrument by which it is attempted to effectuate this design cannot be upheld.

But we do not think it can be said that Mrs. Klotz gave up anything for the conveyance. The assignor was her son-in-law, and hopelessly insolvent. Nothing could be hoped for in the present except to get what might be realized from the assigned estate, and the future promised nothing except by resorting to the earnings the assignor might thereafter accumu-

late.   The evidence makes it entirely certain that Mrs. Klotz
did not, in fact, surrender anything which she thought was of
value, nor give up anything for the deed.    Under the advice
of the attorneys for Hiller, that by surrendering her claim
against him she would probably impart to the assignee the
character of a purchaser for value under the decision in *An-
derson* v. *Lachs,* she signed the release, not in consideration,·
but in aid of the conveyance.    In no just sense can it be said,
on the evidence in the cause, that she purchased the convey-
ance.    The fact that it had been determined on, and that she
was to be preferred without reference to a release by her to
Hiller, and that the release was not at all influential in bringing
about the assignment or the preference given to her claim, and
that she signed the release for her own benefit and not for his, ·
are as distinctly and fully shown as it is possible to establish
any fact by evidence.

The cross petitioners, Marshall Field & Co., should have
had the relief they prayed.    Whether Hiller, in fact, made all
the statements to the representative of the reporting agency of
R. G. Dun & Co. contained in the report made by the repre-
sentative, Moorman, as testified to by Moorman, or made only
a part of them, as testified to by Hiller, is immaterial in view
of the fact, which we think is abundantly proved, that, when
called on by the manager of the credit department of Marshall
Field & Co. for a statement of his financial condition, Mr. Hil-
ler referred them to the report then standing on the books of
Dun & Co. as a true one of his then condition.    Mr. McCon-
nell, the manager of the credits of Marshall Field & Co., tes-
tifies distinctly that Hiller, when applied to for a statement of
his financial condition, stated that he was not prepared to make
a statement, but that the reports standing on the books of the
commercial agencies correctly represented his condition.    Hil-
ler, in some manner, implies that this he did not do, but that
his memory is not clear appears from his statement that he
does not remember to have seen or talked with McConnell at

all.   It is true, he says that he made no statement of his con-
dition, and so says McConnell, but he does not deny that he
referred McConnell to the mercantile agencies as supplying the
information desired.   It cannot be denied that the report on
the books of Dun & Co. exhibited his condition to have been
infinitely better than, in truth, it was; and, accepting as true
the testimony of McConnell, which Hiller had an opportunity,
and failed, to controvert, we are of opinion that the purchase
so procured was a fraudulent one, and that the sellers have
the right to rescind the sale and retake the goods.

The decree on the cross petition of Kyle & Co. must be
affirmed.   They state that they sold to Hiller, on the faith of
a report made by Bradstreet & Co., that, on August 1, 1893,
Hiller had made a certain statement to them, and on the faith
of a report by Dun & Co., that, on August 9, 1893, he had
made certain statements to them of his financial condition,
which reports showed to Kyle & Co. the statements purport-
ing to have been made by Hiller.   But there is nothing in the
record tending to show that Hiller, at these times, made any
statements to these agencies.   The only occasion on which the
evidence tends to prove a statement made by him to any agency
was in February, 1893, to Dun & Co., and it is not pretended
that on this statement any goods were purchased from these
cross petitioners.

*The decree is reversed, except on the appeal of Kyle & Co.; as
to them, it is affirmed.*