THE NATIONAL PARK BANK OF NEW YORK, Respondent, v.
JAMES D. WHITMORE et al., Appellants.

An agreement, made at the time of the purchase of goods on credit,
between the vendor and purchaser, that in case of the insolvency of
the latter, or of an assignment becoming necessary, he will protect
the former by a preference to the amount of the goods sold and unpaid
for, is not in law a fraud upon other creditors, nor is it so far conclusive
evidence of fraud as to avoid a preferential assignment made in pur-
suance thereof.

The affidavits upon which an attachment was issued set forth the making
of such an agreement by the defendants with W., another creditor. The
following facts also appeared on motion to vacate the attachment. A
few days before the assignment was made defendants reported that
they were entirely solvent and could pay all their debts in full, and
made a statement of their affairs showing a large surplus of assets over
liabilities, soon after this claiming they could not pay their debts
in full and were insolvent, they proposed to their creditors a com-
promise, and threatened, unless their offer was accepted, to make an
assignment preferring W., stating that then the other creditors would get
little or nothing. The assignment was made to a foreign assignee two days
after the attachment was issued. The evidence tended to show that the
assignors had been engaged in a prosperous business, and they gave no
satisfactory or intelligible explanation of their sudden alleged insol-
vency. After the assignment was made defendants and the assignee
co-operated apparently to coerce a compromise, and offered to "fix it
up" with a creditor if he would consent thereto. *Held*, the facts justi-
fied a finding that the assignment was threatened and made by defend-
ants, while not actually insolvent, to coerce a favorable compromise
and thus secure a benefit to themselves; at least there was sufficient
to give the court below jurisdiction to award the attachment, and its
exercise was not reviewable here.

(Argued December 7, 1886; decided February 11, 1887.)

APPEAL from order of the General Term of the Supreme
Court in the first judicial department made June 1, 1886,
which reversed an order of Special Term vacating an attach-
ment issued herein. (Reported below, 40 Hun, 499.)

The material facts are stated in the opinion.

*Edward W. Sheldon* for appellants. The agreement by
the defendants to prefer the Whiting Paper Company was

lawful, and did not justify an attachment, on the ground that it furnished evidence that they were about to assign and dispose of their property with intent to defraud their creditors. (Code Civ. Proc. § 636; *Bk. of Leavenworth* v. *Hunt*, 11 Wall. 391; *Jordan* v. *Shoe and Leather Bk.*, 74 N. Y. 467, 473; *Clarke* v. *White*, 12 Pet. 178, 200; *Tompkins* v. *Wheeler*, 16 id. 106; *Spaulding* v. *Strang*, 37 N. Y. 135; S. C. 38 id. 1; *Haydock* v. *Coope*, 53 id. 68; *Low* v. *Graydon*, 50 Barb. 415; *Powers* v. *Graydon*, 10 Bosw. 630; Burrill on Assignments, 246, *Smith* v. *Craft*, 11 Biss. 310; *S. C.* 12 Fed. Rep. 856; *S. C.* 17 id. 705; *Grover* v. *Wakeman*, 11 Wend. 195; *Riggs* v. *Murray*, 2 Johns. Ch. 564; *Anderson* v. *Lachs*, 59 Miss. 111; *Walker* v. *Adair*, 1 Bond, U. S. Cir. Ct. 158.) The original affidavits of De Baun and McCarthy being, so far as material facts are concerned, made upon information and belief, should be ignored. (*Steuben Co. Bk.* v. *Alberger*, 78 N. Y. 252.) The intent to defraud by the disposition of the property must be a fair and logical sequence from the facts shown, and these facts must appear by affidavit. (*St. Armand* v. *De Beixcedon*, 2 Sandf. 703; *Elliston* v. *Bernstein*, 60 How. 145.) Neither the making of an assignment for the benefit of creditors nor a threat to make such an assignment, with or without preferences, is ground for the granting of an attachment. (*Millikin* v. *Dart*, 26 Hun, 24; *Thurber* v. *B'anck*, 50 N. Y. 80; *Anthony* v. *Wood*, 96 id. 180; *Smith* v. *Longmire*, 24 Hun, 257; *Castle* v. *Lewis*, 78 N. Y. 131; *McConnell* v. *Sherwood*, 58 How. Pr. 453; *Work* v. *Ellis*, 50 Barb. 512; *Wilson* v. *Britton*, 26 Barb. 562; *Anthony* v. *Stype*, 19 Hun, 265; *Evans* v. *Warner*, 21 id. 574; *Dickerson* v. *Benham*, 20 How. Pr. 189; *Farwell* v. *Brown*, 1 Fed Rep. 128.) The evidence of the indebtedness of the defendants is not sufficiently alleged in the affidavits upon which the attachment was granted. (Code, § 636; *People* v. *Sutherland*, 81 N. Y. 1; *Ex parte Bk. of Monroe*, 7 Hill, 177; *Ex parte Shumway*, 4 Den. 258; *Payne* v. *Young*, 8 N. Y. 158; *Marine Nat. Bk.* v. *Ward*, 35 Hun, 399; *Gribbon* v. *Back*, id. 541; *Cribben* v. *Schillinger*, 30 id.

248.) The non-residence of one of the defendant partners, as alleged in the affidavit on which the attachment was granted, affords no justification for the attachment. (*McKinlay* v. *Fowler*, 67 How. 388.) The non-residence of the assignee is not proof of a fraudulent intent in making an assignment. (*Blackington* v. *Goldsmith*, 3 How. Pr. [N. S.] 77.) The right to an attachment having been conferred by statute, is limited to a strict compliance with the provisions of the statute. (*Blossom* v. *Estes*, 22 Hun, 472 ; Drake on Attachments, §§ 85, 86.) Where the evidence is capable of an interpretation which makes it as consistent with an innocent as with a fraudulent intent, that meaning must be ascribed to it which accords with innocence. (*Morris* v. *Talcott*, 96 N. Y. 100 ; *Stringfield* v. *Fields*, 7 Civ. Proc. Rep. 360.)

*Charles W. Wetmore* for respondent. An agreement between a debtor and one of his creditors that if the creditor will loan money, he will in case of his insolvency prefer such creditor, is in the nature of a secret lien, which is a fraud on the creditors, who subsequently deal with the debtor without any knowledge thereof, and which will render as to them a subsequent transfer of all the debtor's property in accordance with such agreement void. (*Smith* v. *Craft*, 2 Biss. 340, 345, 348.) A promise, upon sufficient consideration, to indemnify or to secure another, by the giving of the lien by way of chattel mortgage or otherwise upon property, left in the possession of the promisor, creates an equitable lien upon such property, valid as against the promisor, and enforceable against the property, in the hands of an assignee for the benefit of the creditors of the promisor. (*Hale* v. *Omaha Nat. B'k*, 49 N. Y. 626, 633 ; Story Eq. Jur. § 717 ; *Husted* v. *Ingraham*, 75 N. Y. 251, 257, 258 ; *Arnold* v. *Morris*, 7 Daly, 498, 503-506 ; *Chase* v. *Peck*, 21 N. Y. 581 ; *Robinson* v. *Williams*, 22 id. 380 ; *Payne* v. *Wilson*, 74 id. 348.) A chattel mortgage, or an agreement to give a chattel mortgage, or any other form of lien or right to the property of the mortgagor or promisor, which contem-

plates, either by express provision in the instrument or by necessary implication from its terms, or by agreement or understanding, written or verbal, outside the instrument, that the mortgagor or promisor, besides retaining possession of the property, may deal with it in all respects as his own, is fraudulent in law against the other creditors of the mortgagor or promisor. ( *Wood* v. *Lowry*, 17 Wend. 492, 494, 495; *Edgell* v. *Hart*, 9 N. Y. 213, 216, 217; *Southard* v. *Pinckney*, 5 Abb. [N. C.] 184, 196, 197; *Potts* v. *Hart*, 99 N. Y. 168, 172, 173; *Fowler* v. *Haynes*, 91 id. 346.) It cannot be material what the secret intention or animus in the minds of Whiting and the defendants was. They must be presumed to have intended the natural and inevitable consequences of their own agreement and acts. (*Coleman* v. *Burr*, 93 N. Y. 17, 31; *Potts* v. *Hart*, *supra.*) A provision in the assignment itself, that the assignee may compromise with the creditors, upon such terms as he may deem to the advantage of the creditors and asssignor, or the giving of a preference, conditional upon the creditors to be preferred, releasing the unpaid residue of their debts, or an actual intent to accomplish similar ends, proved by evidence independent of the instrument, render an assignment fraudulent and void. ( *Work* v. *Ellis*, 50 Barb. 512, 573; *McConnell* v. *Sherwood*, 58 How. Pr. 453, 460, 461; *S. C.*, 84 N. Y. 522, 530; *Hyslop* v. *Clark*, 14 Johns. 458; *Grover* v. *Wakeman*, 11 Wend. 187; *Gasherie* v. *Apple*, 14 Abb. 68; *Livermore* v. *Rhodes*, 27 How. 506; *Anthony* v. *Stype*, 19 Hun. 265.) In England, agreements to give security for advances made, when the actual execution of the instrument affecting the security is to be postponed until the lender has lost confidence in the debtor, or until the debtor becomes insolvent, are fraudulent as against creditors. (*Ex parte Fisher*, 7 L. R. [Ch. App. Cas.] 636, 644; *In re Gibson*, 8 L. R. [Ch. Div.] 230; *Ex parte Kilner*, 13 id. 245, 247, 248; *Ex parte Burton*, id. 102, 108.) Here the obligation to be secured was incurred with the understanding that it should not be made known until the necessities of the debtors' condition

should so require for the protection of the creditor. (*Hilliard*
v. *Cagle*, 46 Miss. 309, 337, 345.) Inference of fraudulent
intent can be drawn from threats to make a preferential
assignment, if sued, or if an offered compromise is rejected.
(*White* v. *Leszynsky*, 14 Cal. 165, 167; *Newman* v. *Krain*,
34 La. [Ann.] 910; *Curry* v. *Hart*, 2 Sandf. Ch. 353, 417;
*Cram* v. *Mitchell*, 1 id. 251; *Anderson* v. *Sachs*, 59 Miss. 111.)

*W. W. Macfarland* for William Whiting, assignee, etc.
Neither the promise to prefer nor the assignment of the
defendants was evidence of an intention to assign and dispose
of property fraudulently and with a view to hinder, delay and
defraud creditors. (*Candee* v. *Lord*, 2 Comst. 269; *Bronson*
v. *R. R. Co.*, 2 Black. 524; *Underwood* v. *Lachs*, 59 Miss.
111; *Spaulding* v. *Strang*, 38 N. Y. 1.) The question raised
and decided below cannot be raised on a motion to vacate an
attachment. (*Thurber* v. *Blank*, 50 N. Y. 80; *Anthony* v.
*Wood*, 96 id. 180; Bishop on Assignments, 245; *Casler* v.
*Shipman*, 35 N. Y. 533.) The affidavits on which the warrant
of attachment was granted were wanting in both the quality
and quantity of proof required by law. (*Ex parte Haines*,
18 Wend. 611; *Hall* v. *Bond*, 27 How. Pr. 272; *Ackroyd* v.
*Ackroyd*, 11 Abb. Pr. 342; *Brewer* v. *Tucker*, 13 id. 76;
*Willard* v. *Denton*, 17 How. Pr. 480; *Genin* v. *Tompkins*,
12 Barb. 273; *Fitzgerald* v. *Belden*, 49 How. 225; *In re Bliss*,
7 Hill, 187; *In re Faulkner*, 4 id. 598; *Morris* v. *Talcott*,
96 N. Y. 107; *Stringfield* v. *Fields*, 7 N. Y. Civ. Pro. R. 360;
3 Greenl. Ev., §§ 381, 385.) Facts must be stated necessarily
leading to the presumption of fraudulent intent. (*Morris* v.
*Talcott*, 96 N. Y. 104, 107.) The facts must necessarily tend
to establish an intent of guilt. (*Stringfield* v. *Fields*, *supra*.)
The right to a warrant of attachment rests solely on statute
and being in derogation of the common law, every statutory
condition must be shown to exist in order to confer jurisdiction
or authorize the exercise of judicial discretion. (Drake on
Attachments, §§ 106, 107; *Blossom* v. *Estes*, 84 N.Y. 614; *Start-
well* v. *Field*, 68 id. 341; *Hall* v. *Bond*, 22 How. 272; *Shultz*

v. *Hoagland,* 85 N. Y. 463 ; *Steuben County Bank* v. *Alberger,* 78 id. 258 ; *Wilson* v. *Britton,* 26 Barb. 562 ; *Livermore* v. *Northup,* 44 N. Y. 109 ; *Ogden* v. *Peters,* 21 id. 23.)

EARL, J.    This attachment was granted on the 31st day of December, 1885, on the ground that the defendants were about to assign their property with intent to defraud the plaintiff and their other creditors.    On the 2d day of January thereafter, the defendants executed to William Whiting, of Holyoke, Mass., a general assignment for the benefit of their creditors, in which they preferred him for upwards of $23,000.    Upon motion made by the defendants at Special Term, the attachment was vacated, as appears by the opinion there pronounced, upon the ground that the affidavits upon which the attachment was based did not sufficiently establish the fraudulent intent alleged.    From the decision of the Special Term, the plaintiff appealed to the General Term, and there the order of the Special Term was reversed, as appears by the opinion pronounced, on the ground that the defendants had agreed with Whiting, at the time of the sale of certain goods to them, that in case of their insolvency or of an assignment becoming necessary he should be protected by a preference to the amount of the goods so sold to them and unpaid for.    It was held that such an agreement was in law a fraud upon other creditors and rendered an assignment giving a preference in pursuance thereof fraudulent and void. From the order of the General Term the defendants have brought this appeal.

We have frequently held that we cannot look at the opinion pronounced below in a case like this for the grounds upon which the decision proceeded, and hence if we find in this record any ground upon which the General Term could, in the exercise of its jurisdiction, have reversed the order of the Special Term and thus sustained the attachment, its order must be affirmed although we do not agree with its opinion.

We do not think that the promise of the defendants to make a preferential assignment in favor of Whiting was in

law a fraud upon other creditors or that it was so far con-
clusive evidence of fraud as to avoid the assignment made in
pursuance thereof.

The property which the defendants obtained by their agree-
ment with Whiting added to their visible assets, and all their
assets remained liable to the legal remedies of their creditors
until the assignment was made. By adding $23,000 to their
assets by goods thus obtained of Whiting, and then preferring
him for the same amount in their assignment, no harm was
done to or fraud committed upon their other creditors.

It is said, however, that this sale under a secret promise of
a future preference gave the defendants a delusive appearance
of prosperity and solvency, and thus enabled them to obtain
credit which they otherwise could not have obtained, and that
thus the agreement necessarily operated as a fraud upon other
creditors. But it cannot be maintained that an agreement is
fraudulent which simply adds to a debtor's assets, gives him
the appearance of solvency which he does not in fact possess,
enables him to obtain credit and continue his business, and
thus postpones impending failure. A debtor may obtain
credit by a promise to pay in the future, either in cash or in
property, or by promising to give his check or an indorsed
note, or a confession of judgment. Neither such a promise,
nor its performance, is a legal fraud upon any one ; and why
may he not promise to give security upon the property pur-
chased, or other property? Such a promise, honest in fact,
has never been held to be a fraud or to work a fraud upon
creditors. Security, honestly given in pursuance of such a
promise, relates back to the date of the promise, and, except as
to intervening rights, is just as good and effectual as if given at
the date of the promise ; and it has generally been so held, even
in bankruptcy proceedings. (Bump's Bankruptcy [10th ed.],
821 ; *Forbes* v. *Howe*, 102 Mass. 427 ; *Bank of Leavenworth*
v. *Hunt*, 11 Wallace, 391 ; *Burdick* v. *Jackson*, 7 Hun, 488 ;
*Ex parte Ames*, 1 Lowell's Dec. 561 ; *Ex parte Fisher*, 7 Ch.
App. Cas. L. R. 636 ; *Ex parte Kilner*, 13 L. R. Ch. Div.
245 ; *Mercer* v. *Peterson*, 2 Ex. L. R. 304 ; *S. C.* 3 id. 104.)

But here the agreement was to make the preferential assignment in case it became necessary to protect the creditor; and it is further claimed that such a conditional agreement is a fraud upon other creditors. A failing debtor may make an assignment preferring one or more creditors because he is under a legal, equitable or moral obligation to do so, or he may do it from mere caprice or fancy, and the law will uphold such an assignment honestly made. If he may make such an assignment without any antecedent promise, why may he not make it after and in pursuance of such a promise? How can an act otherwise legal be invalidated because made in pursuance of a valid or invalid agreement honestly made? In *Smith* v. *Croft* (11 Bissell, 340), Judge GRESHAM held that such a conditional agreement for a future preference was a fraud upon creditors. But in the same case (17 Fed. Rep. 705), upon a rehearing, Judge WOODS held that the same agreement was not fraudulent, and in a very satisfactory opinion showed that such an agreement, as we have here, for a future preference in case of insolvency is not a legal fraud upon creditors. (See, also, *Walker* v. *Adair*, 1 Bond [U. S. Cir. Ct.], 158; *Anderson* v. *Lachs*, 59 Miss. 111; *Spaulding* v. *Strang*, 37 N. Y. 135; *S. C.* 38 N. Y. 1; *Haydock* v. *Coope*, 53 N. Y. 68.)

This agreement did not create any lien, legal or equitable, upon the property of the defendants. It was not an agreement for a future lien upon the specific property, which is sometimes held to create an equitable lien which may be enforced in equity. It was not an agreement for any lien at all. It was simply an agreement, in case of an assignment by the defendants, to prefer Whiting. The agreement did not bind defendants' property, nor encumber it, but left it subject to all the remedies of their creditors, and it neither hindered nor delayed those creditors. They could have made the same assignment without a previous agreement and it is impossible to perceive how the agreement worked any legal harm to any one.

It is not important to determine whether this was an agreement of which a court of equity would enforce specific

performance, but we do not believe it was, and think it must stand both in law and equity like an agreement to pay at a future day.

But we think there were sufficient facts set forth in the affidavits to give the court jurisdiction to determine whether or not the defendants in threatening to make, and in making the assignment, were actuated by a fraudulent intent. A few days before the assignment was made the defendants reported that they were entirely solvent and could pay all their debts in full, and they made a statement of their affairs showing a large surplus of assets over liabilities. Soon after these representations. they claimed that they could not pay their debts in full and that they were insolvent, and proposed to their creditors a compromise of fifty cents on the dollar, payable in nine, twelve and fifteen months without security. The evidence tended to show that they had been engaged in a prosperous business yielding them large profits, and they gave no satisfactory or intelligible explanation of their sudden alleged insolvency. They threatened that unless their offer of compromise was accepted they would make an assignment preferring Whiting and that then the rest of their creditors would get little or nothing. The efforts of the defendants, with the co-operation of their assignee after the assignment, apparently to coerce a compromise at twenty-five cents on the dollar, their offer " to fix it up " with a creditor afterward if he would assent to the compromise, their selection of a foreign assignee, the relations between him and them, and the secret promise of a future preference are also pertinent facts.

The court at General Term, looking at no one fact, but at all the facts before and after the assignment, could, we think, find that the assignment was threatened and made by the assignors, not solely for the honest purpose of devoting their assets to the payment of their just debts, but, while not actually insolvent, to coerce a favorable compromise from their creditors and thus secure a benefit to themselves.

The proof of the fraudulent intent alleged may not have been very cogent, but it was sufficient to give the court below

jurisdiction to award the attachment, and hence we are bound by its decision and have no jurisdiction to interfere therewith.

The appeal should therefore be dismissed with costs.

All concur.

Appeal dismissed.