## BRITTAIN et al. v. CROWTHER et al.

### (Circuit Court of Appeals, Eighth Circuit. February 6, 1893.)

### No. 173.

1. FRAUDULENT CONVEYANCES—EVIDENCE—ADMISSIBILITY.

   To establish fraud in a transfer of goods, it is competent to prove every fact and circumstance tending to show a fraudulent purpose, including the debtor's acts, statements, and correspondence, in so far as they indicate fraud or want of consideration; also the kind, quantity, and value of the goods purchased preceding the transfer; the statements made to creditors as to his financial condition at the time of purchasing the goods; the amount and kind of property he owned before his failure, and what disposition he made of it; and the debts he owed after his failure, and when and for what they were contracted, and whether he paid any of these debts after disposing of his property.

2. SAME—KNOWLEDGE OF TRANSFEREE.

   A purchaser from a debtor selling to defraud his creditors is bound by such knowledge as would put a prudent man upon inquiry.

3. SAME—CLAIMS OF WIFE.

   Where a husband tells his wife that certain land of his shall be considered hers, but afterwards the husband sells the land, and invests the proceeds in business, the wife cannot claim, as against the husband's creditors, that the said proceeds are hers.

4. HUSBAND AND WIFE—WIFE'S PROPERTY—EARNINGS.

   Under Cobbey, Consol. St. Neb. 1891, §§ 1411–1414, the earnings of the wife, made while she is living with her husband, and engaged in no separate business, are the property of the husband, and liable to the claims of his creditors.

In Error to the Circuit Court of the United States for the District of Nebraska. Reversed.

Statement by CALDWELL, Circuit Judge.

On the 24th day of April, 1891, the plaintiffs in error, Brittain, Smith & Co., brought suit by attachment in the circuit court of the United States for the district of Nebraska, against Daniel S. Lohr, to recover the sum of $2,334.75, for goods, wares and merchandise sold and delivered by the plaintiffs in error to the defendant between the 31st day of July and the 10th day of September, 1890. On April 25, 1891, the order of attachment was levied upon a stock of general merchandise at Broken Bow, Neb., as the property of the defendant Lohr. On May 4, 1891, Harriet E. Lohr, the wife of Daniel S. Lohr, the defendant in the principal action, and Frank Crowther, her brother, filed a petition of intervention alleging that they were associated together as partners under the firm name of Crowther & Co., and that the goods levied upon were their partnership property, and of the value of $6,000, and prayed that the same might be delivered to them upon the execution of a bond agreeably to the law and practice in that state in such cases, which was done. On May 26, 1892, the plaintiffs obtained judgment against Daniel S. Lohr in the attachment suit for $2,387 and costs. The plaintiffs filed an answer to Crowther & Co.'s intervening petition, denying that the interveners owned the goods attached, and alleging that they were the property of Lohr, who had transferred the same, together with a large amount of other property and money, to Crowther & Co., for the purpose of defrauding his creditors; that Crowther & Co. never paid for the goods, and had knowledge of Lohr's fraudulent purpose at the time they acquired the same. A reply was filed to this answer, and the issues thus made up were tried before a jury, and there was a verdict and judgment in favor of the interveners, and the plaintiffs sued out this writ of error.

Edson Rich, for plaintiffs in error.

Before CALDWELL and SANBORN, Circuit Judges, and SHIRAS, District Judge.

CALDWELL, Circuit Judge, (after stating the facts.) The issue to be tried was whether the transfer of the stock of goods by Lohr to his wife and brother-in-law was made in good faith to pay bona fide debts which he owed them, or whether it was a fraudulent device to hinder, delay, and defraud his creditors. Upon the trial of such an issue, it was competent to prove every fact and circumstance tending to show that Lohr made the transfer of the goods for the purpose of defrauding, hindering, or delaying his creditors, or that he transferred them to his wife without any sufficient consideration. The plaintiffs had a right to show Lohr's acts, statements, and correspondence, in so far as they had any tendency to prove that he was acting fraudulently, or had transferred the goods without consideration. They had a right to show the kind, quality, and value of the goods which he purchased in the spring and fall preceding the transfer of the stock of goods to Crowther & Co.; to show the statements he made to his creditors at the time he purchased the goods, or at any time thereafter, as to his financial condition and business prospects; to show the amount and kind of property he owned before his failure, and what disposition he made of the same; to show the amount of debts he owed after his failure, and when and for what they were contracted, and the explanations, if any, he gave for his failure, and whether or not he paid any of his debts after disposing of his prop-

erty. At one time Lohr owned and operated two stores at Broken Bow, and later, and about July, 1890, he had three stocks of goods in as many separate storehouses. He purchased the goods in these three stores mainly on a credit. These three stocks of goods, together with an old stock valued at $1,800, which Lohr had traded for at Ceresco, were disposed of in the following manner: One stock, and the principal one, was turned over to his wife and his brother-in-law, the interveners in this case. It is claimed that Lohr owed his wife $2,200 for services, and his brother-in-law, Crowther, $400 for clerk hire, and in August, 1890, this stock of goods—which invoiced $3,400, according to the testimony of the interveners, but which plaintiffs claim was worth much more—was turned over to Mrs. Lohr and Crowther in payment of Lohr's indebtedness to them, they executing a note to Lohr for the difference between the indebtedness to them and the invoiced value of the goods, viz. $1,296. There was also turned over to Mrs. Lohr and Crowther, at the same time, the old stock of goods, which Lohr had traded for at Ceresco, valued at $1,800; and the plaintiffs claim, and the evidence tends to show, that a considerable amount of goods was taken from Lohr's other stores, and placed in the store conducted in the name of Crowther & Co., of which no invoice was taken. Another one of these three stocks of goods Lohr removed to Lead City, S. D., the last of October, 1890, and about the 1st of December following, he sold this stock, which invoiced $5,000 or more, to Emil Faust, for $3,220; and on the 8th day of the same month B. S. Lilly placed on record a bill of sale from Lohr for the remaining stock of goods in Broken Bow, and took possession of the same. Having divested himself, in the manner stated, of all his visible and tangible property, Lohr, on the 9th day of December, 1890, one day after the bill of sale for the last stock of goods was placed on record, wrote the following letter to one of his creditors:

"Broken Bow, Neb., Dec. 9, 1890.

"L. Simon & Co., Chicago, Ills.: I suppose, ere this, you have been informed of my condition. Till just a few days ago, I thought I could pull through, but it is impossible. I am short $8,000.00 and cannot account for it in but one way,—a direct steal.

"Resp.,                           D. S. Lohr."

He owed a large amount of debts at the time of his failure, none of which he paid. His shortage largely exceeded $8,000 and was undoubtedly, as he states in his letter, the result of "a direct steal;" but there is not a scintilla of evidence in the record indicating that any goods or money had been stolen from him. When he sold the stock of goods which he had taken to Lead City, he telegraphed to his wife: "Pay nothing. Will start home to-morrow." Very much of the evidence tending to prove the foregoing fact, was excluded by the court. The statements of Lohr to his creditors and others, tending to prove his fraudulent practices and purposes, were excluded "for the reason," as stated in the bill of exceptions, "that said conversations were not held in the presence of any member of the firm of Crowther & Co.;" and the letter of Lohr to Simon & Co., which we have quoted, and other letters of like character, as well as Lohr's

telegram to his wife, were excluded upon the ground that they were irrelevant. But all this testimony was competent and relevant. The plaintiffs were not required to prove their whole case at once, or by one witness. To support the issue on their part, it was necessary to prove that Lohr turned the goods over to Crowther & Co. for the purpose of defrauding his creditors, and that Crowther & Co. did not pay value for the goods, or that, if they did pay for the goods, they did so with knowledge of the fraudulent purpose of Lohr in making the sale, or, which is the same thing, with such knowledge as would put a prudent man upon inquiry. It is very rare that a fraudulent purpose can be proved by direct and positive evidence. Hence, proof of every fact and circumstance having a tendency to show the fraudulent purpose on the part of Lohr was admissible. Proof of the fraudulent purpose on his part was not of itself sufficient to make out the plaintiff's case, but it was a necessary step in that direction. After establishing the fraudulent purpose on the part of Lohr, it was open to the plaintiffs to prove every fact and circumstance tending to show that Mrs. Lohr and Crowther either knew of this fraudulent purpose on the part of Lohr, or that they had good reason to suspect it. An actual agreement or contract between Lohr and Crowther & Co. that the latter would aid the former to defraud his creditors does not have to be shown. It is sufficient to avoid the transfer of the goods, if the facts and circumstances within the knowledge of Crowther & Co., or either of them, were such as fairly to induce the belief that they knew of the fraudulent purpose of Lohr, or that, having good reason to suspect it, they purposely refused to make inquiry, and remained willfully ignorant. In other words, actual knowledge of the fraudulent purpose of Lohr does not have to be brought home to Crowther & Co. If they purchased the goods under circumstances which would have put a man of common honesty and sagacity upon inquiry, they were bound to inquire; and, if they neglected to do so, then they are chargeable with all the facts due inquiry would have developed. Singer v. Jacobs, 11 Fed. Rep. 559; Walker v. Collins, 4 U. S. App. 406, 1 C. C. A. 642, 50 Fed. Rep. 737. A full consideration, paid in cash, will not protect a purchaser who has notice, actual or constructive, that the vendor is selling to defraud, hinder, or delay his creditors; and the reason is, that by aiding the debtor to convert his visible and tangible property, which cannot readily be concealed from his creditors, into money or negotiable securities, which it is easy to put beyond their reach, the purchaser thereby assists the debtor to carry out his fraudulent purpose. Clements v. Moore, 6 Wall. 299, 311; Singer v. Jacobs, supra; Walker v. Collins, supra.

As the case must go back for a new trial, it is proper to notice the basis of Mrs. Lohr's claim against her husband, which constituted the chief consideration for the transfer of this stock of goods. She claims that at the time of her marriage with Lohr, in 1873, she loaned him a sum of money, the exact amount of which she has forgotten, but it was about $200 or $300, and that in 1885 her husband paid her $300 in satisfaction of this loan, and this sum she invested in the purchase of what is known as the "Sill Land." In 1890 the

Sill land, and a quarter section owned by Lohr, were traded by Lohr to Meeker for an old stock of goods, known as the "Ceresco Stock," valued at $1,800. The land which Lohr contributed towards the purchase of this stock of goods was worth about as much as the Sill land, put in by Mrs. Lohr. Assuming that Mrs. Lohr had an interest in the Ceresco stock proportioned to the value of the Sill land which went into the purchase, she would own about one half of that stock. The whole of this stock went into the store of Crowther & Co., and was not invoiced, or in any way accounted for; the whole of it being treated as her property. Her right to the remainder of the Ceresco stock of goods, and to the principal stock turned over by Lohr, is attempted to be supported upon the following grounds: Lohr pre-empted a piece of land, proved up his pre-emption, and obtained a patent for the land. He lived upon the land with his family. After the patent was issued to Lohr for the land, Mrs. Lohr says, "I told him I thought I had earned the place, in holding it, and I thought it was right it should be mine, and he said it should be." This was all that was said or done about this land. The land was afterwards sold by Lohr, and the proceeds used in his business, and Mrs. Lohr now claims that the proceeds of the sale belonged to her, and constituted a debt against her husband, because he had told her the land should be hers. The law will not sanction this claim, as against Lohr's creditors. Backer v. Meyer, 43 Fed. Rep. 702; Peters v. Construction Co., (Iowa,) 34 N. W. Rep. 190; Humes v. Scruggs, 94 U. S. 22.

The remaining ground upon which Mrs. Lohr claims she was a creditor of her husband, as stated by herself, is that she and her husband moved from Bennett, Neb., to Merna, Custer county, in 1882 or 1883, and that prior to leaving Bennett she made an agreement with her husband that if she would go to Custer county, and assist him in his business, he would give her one half of the profits, or $50 per month, as she might elect; that she was opposed to moving to Custer county, and this agreement was made in order to get her to go; that she did go, and assisted her husband in his business for three or four years, and elected to take $50 per month for her services, and that no part of this sum was ever paid to her until she and Crowther purchased the stock of goods in question from her husband.

Upon Mrs. Lohr's own statement of the facts, the claim she sets up against her husband for the money arising from the sale of his land, and for wages for services performed for her husband, are of no validity, as against the claims of his creditors. Mrs. Lohr had no separate property, save the Sill land, which went towards the purchase of the old stock of goods at Ceresco. She never carried on any business, trade, or labor on her separate account, nor performed any service or labor for any person except her husband, and was not his partner in business. The married women's act of Nebraska contains the provisions commonly found in such acts. Chapter 13, §§ 1411–1414, Cobbey, Consol. St. Neb. 1891. By the terms of the act, the wife cannot hold as her separate property, as against her husband's creditors, property which is the gift of her husband.

Property acquired by the husband during coverture, under this statute, is not, as it is under the civil law, community property, but belongs to the husband. The authorities are not quite uniform upon the question whether, under a statute like that in Nebraska, the husband is entitled to his wife's earnings for labor performed for others. Kelly, Cont. Mar. Wom. c. 6, § 5, p. 152, and cases cited. In Seitz v. Mitchell, 94 U. S. 580, 584, after citing many cases, Mr. Justice Strong, speaking for the supreme court, says:

"Many of these cases relate to the ownership of the wife's earnings; and nowhere, so far as we are informed, has it been adjudged that her earnings, or the product of them, made while she is living with her husband, and engaged in no separate business, are not the property of the husband, when the rights of his creditors have been asserted against them."

While the cases may not be entirely harmonious upon the question of the husband's right, under these modern statutes, to the earnings of his wife for labor performed by her for third persons, the authorities are uniform that such statutes do not operate to give the wife a legal claim upon her husband, or his estate, for wages, for performing her domestic duties as a wife, or for aiding and assisting him, by her labor, in any business pursuit he may be engaged in, and any promise of the husband to pay his wife for such services is without consideration, and void, as against the claims of his creditors; and property transferred to the wife by the husband to pay for such services, long after they were rendered, and after he has become insolvent, or is largely in debt, may be seized and appropriated to the payment of the husband's debts. Kelly, Cont. Mar. Wom. p. 152, and cases cited; Seitz v. Mitchell, 94 U. S. 580, 584, I MacArthur, 480; McAnally v. O'Neal, 56 Ala. 299; Manufacturing Co. v. Hummell, 25 N. J. Eq. 45; Cramer v. Reford, 17 N. J. Eq. 367, 382; Humes v. Scruggs, supra; Hamill v. Henry, 69 Iowa, 752, 28 N. W. Rep. 32; Triplett v. Graham, 58 Iowa, 135, 12 N. W. Rep. 143.

Mrs. Lohr's own testimony brings this case directly within the operation of this rule. The services for which she charges her husband were performed years before the transfer of the goods, which did not take place until her husband was largely in debt, and on the eve of a disastrous failure. Upon the undisputed facts of the case, therefore, the jury should have been instructed that the sale of the goods to Mrs. Lohr upon such a consideration was void, as against her husband's creditors. The transfer of property by an insolvent husband to his wife, under these circumstances, cannot be regarded otherwise than as a gift, and is constructively fraudulent and void, as against the husband's creditors, no matter how pure the motive which induced it. Belford v. Crane, 16 N. J. Eq. 265; McAnally v. O'Neal, supra.

Crowther stands in no better position than Mrs. Lohr. He admits he knew the character of Mrs. Lohr's claim against her husband, which was accepted in payment for the goods. He is therefore chargeable with notice of the want of consideration for the alleged purchase. The judgment of the court below is reversed, and the cause remanded, with instructions to grant a new trial.