### FOSTER et al. v. McALESTER et al.

(Circuit Court of Appeals, Eighth Circuit. February 19, 1902.)

No. 1,583.

1. CHATTEL MORTGAGES—IMPEACHMENT FOR FRAUD.

Plaintiffs, who held a chattel mortgage on two stocks of goods in Arkansas, permitted the mortgagor to remove the goods to the Indian Territory, and transfer them to a firm of which he became a member. under an agreement that the firm should assume the debt, and would give plaintiffs a mortgage on its stock at any time when requested. Some 18 months later such mortgage was given to secure the amount then remaining due on the old debt and a subsequent indebtedness. and plaintiffs took possession of the stock thereunder. *Held*, that an instruction in an action by plaintiffs against attaching creditors of the mortgagors, who had seized the goods, that the failure of plaintiffs to record their Arkansas mortgage in the Indian Territory was a badge of fraud, which, if unexplained, entitled defendants to a verdict, was erroneous, since plaintiffs made no claim under such mortgage, and, as its recording in the Indian Territory would have been a useless act, they were under no duty to so record it.

2. SAME—EVIDENCE.

Under an allegation of the answer in an action by a chattel mortgagee against attaching creditors charging a secret agreement between plaintiff and the mortgagors to conceal the indebtedness to plaintiff for the purpose of enabling the mortgagors to purchase on credit the goods which were afterward included in the mortgage, evidence that the mortgagors made false statements to some of their creditors in regard to their financial condition is admissible; but it cannot affect the rights of plaintiff, in the absence of evidence that he had knowledge of such statements, and was in some manner connected with them for the fraudulent purpose alleged.

114 F.—10

**3. SAME.**

A wholesale mercantile firm, in answer to a general inquiry from another house for information "regarding the credit, promptness, and financial standing" of a customer, is not bound to disclose its own business relations or the state of its account with such customer; and, where such an inquiry was answered in good faith and truthfully so far as the firm inquired of then had knowledge, it is not chargeable with fraud because it did not state the fact that it had an agreement with the customer to give it a mortgage to secure its account whenever demanded, which will affect the validity of such a mortgage taken over a year afterward.

**4. SAME—PRIOR AGREEMENT TO GIVE MORTGAGE.**

An agreement between a wholesale mercantile firm and a customer that the latter will give a mortgage on his stock, when demanded, to secure his indebtedness to the firm, is entirely legal; and, unless fraudulent in fact, such an agreement cannot be held to constitute a fraud in law, or a badge of fraud, to affect the validity of a mortgage subsequently requested, and voluntarily given by the debtor.

**5. FRAUD—WHEN QUESTION FOR JURY—PRESUMPTIONS.**

The law will not deduce fraud from any number of acts, each of which is lawful and innocent in itself; but one who seeks to attach a fraudulent character to such acts must go further, and show that they were in fact done with a fraudulent intent and for a fraudulent purpose; and whether they were so done or not is a question of fact, which must be submitted to the jury when there is evidence justifying its submission.

**6. SAME—EVIDENCE TO ESTABLISH.**

Slight circumstances, or circumstances of an equivocal tendency, or circumstances of mere suspicion, leading to no certain results, are not sufficient to establish fraud; but they must not be, when taken together and aggregated,—when interlinked and put in proper relation to each other,—consistent with an honest intent. If they are, the proof of fraud is wanting.

**7. CHATTEL MORTGAGES—VALIDITY—PREFERENCE OF CREDITORS.**

A chattel mortgage, valid on its face, taken by a bona fide creditor for the purpose of securing his debt, and not for the purpose or with the intent of shielding his debtor and assisting him to hinder and delay his other creditors, is valid, and impervious to attack from any quarter, in the absence of a bankruptcy law which renders it invalid as a preference.

**8. SAME—ACTION BETWEEN MORTGAGEE AND CREDITORS—INSTRUCTIONS.**

Instructions which convey to a jury the impression that secrecy or haste in a transaction by which a debtor secures one of his creditors, or the fact that the giving of such security operates to hinder and delay other creditors, are badges of fraud, which place the burden on the secured creditor to sustain the validity of his security, are misleading and erroneous, without a full. explanation of the legal right of a bona fide creditor to obtain security for his debt to the exclusion of others, if done in good faith; and such instructions are not warranted in any case unless there is other evidence tending to impeach the good faith of the transaction, since such facts are entirely consistent with the exercise by the creditor of his legal rights.

In Error to the United States Court of Appeals in the Indian Territory.

This action was brought by J. Foster & Co., the plaintiffs in error, in the United States court for the Northern district of the Indian Territory, at Muskogee, against James J. McAlester and others, the defendants in error, to recover the value of a stock of general merchandise. The plaintiffs acquired their right to the goods under a chattel mortgage thereon executed by John G. Terrell, Elmer Terrell, and J. C. Terrell, composing the firm of E. Terrell & Co., retail merchants doing business at Wagoner, in the Indian Territory,

to secure the payment of a note executed by the mortgagors to the mortgagees for the sum of $3,971.56, and for another purpose not necessary to be mentioned. The mortgage was duly executed and acknowledged on the 28th day of January, 1895, and duly recorded on the next day. In pursuance of a stipulation contained in the mortgage, the mortgagees, through their agent, took immediate possession of the mortgaged property, and, in conjunction with the mortgagors, proceeded to sell the goods in the usual course of business, applying the proceeds of the sale daily to the mortgage debt. In the month of March following the execution of the mortgage, Tootle, Wheeler & Motter and Tennent-Stribling Shoe Company severally brought their actions against E. Terrell & Co., and sued out writs of attachment, which were placed in the hands of the defendant McAlester, as United States marshal for the Indian Territory, who, with the other defendants, his deputies, levied the writs on the stock of goods covered by the plaintiffs' mortgage, took them out of the plaintiffs' possession, and sold them. In their answer the defendants alleged they had good right to seize the goods on the writs of attachment, because they say, in substance, that the plaintiffs' mortgage was fraudulent and void for the following reasons: That John G. Terrell was during the year 1893 engaged in the mercantile business in the town of Waldron, in Scott county, and in the town of Mansfield, in Sebastian county, Ark., and that on the 11th day of February, 1893, he executed a chattel mortgage to the plaintiffs on his stocks of goods at each of these places to secure an indebtedness of $4,300; that this mortgage was duly recorded in the counties in Arkansas, where the goods then were; that afterwards, about July 5, 1893, the plaintiffs permitted Terrell to remove both stocks of goods from Arkansas to Wagoner, in the Indian Territory, while the Arkansas mortgage thereon was in full force and effect; that it was understood and agreed that upon the removal of the goods to Wagoner the firm of E. Terrell & Co. was to be formed, consisting of John G. Terrell, Elmer Terrell, and J. C. Terrell, which firm was to be the successor of John G. Terrell, and assume the payment of his debts, including his indebtedness to the plaintiffs, and that it was also agreed after the goods were removed from Arkansas to the Indian Territory the firm of E. Terrell & Co. was to give the plaintiffs a chattel mortgage on the goods whenever they deemed it necessary for their protection, and the same should be demanded; that it was agreed that the indebtedness of Terrell & Co. to the plaintiffs should be kept concealed from the attaching creditors and other creditors of Terrell & Co. for the purpose of enabling Terrell & Co. to purchase goods on credit, in order that the plaintiffs might secure the benefit of such purchase, by demanding the mortgage; that, in furtherance of this alleged fraudulent scheme, E. Terrell & Co. made in writing, and mailed to the attaching creditors, false and fraudulent statements of their financial condition; and that the plaintiffs made to Tootle, Wheeler & Motter, one of the attaching creditors, a false and fraudulent statement of the financial condition, promptness, and ability to meet their obligations, of E. Terrell & Co.

Charles E. Warner, for plaintiffs in error.

Harrison O. Shepard, Richard B. Shepard, Charles B. Stuart, and J. H. Gordon, for defendants in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

CALDWELL, Circuit Judge, after stating the case as above, delivered the opinion of the court.

Indisputably, on the record before us, the chattel mortgage executed by E. Terrell & Co. to the plaintiffs on the 28th day of January, 1895, was on its face a valid instrument; and the debt it was given to secure, a bona fide debt. There is, indeed, no pretense that Terrell & Co. did not honestly owe the plaintiffs the debt the mortgage was given to secure. This being so, we proceed to a

consideration of the grounds upon which the defendants seek to avoid it. The only testimony in the record relating to the removal of the goods from Arkansas to the Indian Territory—and it is certified in the bill of exceptions that it contains all the testimony—is:

"That shortly prior to July 5, 1893, the said Terrell went to see the said Josiah Foster, and told him that they had just had three successive crop failures in his section, and it was useless for him to continue business at Waldron, and hope to pay his debts, and that he wanted to find a good business location in the Indian Territory, and locate there, moving his goods and merchandise over there, but that he could not do so unless Foster would consent; that he selected Wagoner as the place, and wanted to take his two sons in with him, move the merchandise over there, and begin business at that place; that, if Foster would agree for him to move the merchandise, the new concern would assume all indebtedness to plaintiffs, and would make a new mortgage upon the stock of merchandise at Wagoner to secure their indebtedness to plaintiffs whenever Foster called upon them for same. That, upon these statements and agreements on the part of Terrell, Foster consented for him to carry his stock of merchandise from Waldron and Mansfield, Arkansas, to Wagoner, in the Indian Territory. That Terrell moved the said stock of merchandise to Wagoner, and opened up the store at Wagoner in the firm name of E. Terrell & Co. about July 5, 1893. That at the time of removing to Wagoner said Terrell had not paid any part of the indebtedness to plaintiffs, and that they moved about $10,000 worth of merchandise to Wagoner. That the plaintiffs' debt was embraced in one note for $1,500, and two notes each for $1,400; and in the fall of 1893 and part of 1894 one of the $1,400 notes was paid off, and about $600 or $700 was paid on the other two notes out of the proceeds of sales of merchandise brought from Waldron, Arkansas, and subsequent purchases. That after the said business was begun at Wagoner the plaintiffs continued to sell the said E. Terrell & Co. goods in the regular course of trade, and received payment from them on account from time to time, until January 28, 1895, at which time there was due the plaintiffs from said firm of E. Terrell & Co., for balance on merchandise sold them at Wagoner, the sum of $1,175.41, and upon the two unpaid notes the sum of $2,796.15, making a total indebtedness then due of $3,971.56."

Upon this evidence the court charged the jury as follows:

"The omission of J. Foster & Co. to file in the Indian Territory their mortgage executed in Arkansas, when they consented that Terrell might remove the merchandise covered by such mortgage from Arkansas to the Indian Territory, is a badge of fraud, which, if unexplained, would authorize you to find that the mortgage executed on January 28, 1895, by E. Terrell & Co., was fraudulent, and to render your verdict for the defendant."

This charge is erroneous, for several reasons. The omission of the plaintiffs to file in the Indian Territory the mortgage executed on the goods while they were in Arkansas, and duly recorded in that state, was not of itself a fraud, or a badge of fraud, which would authorize the jury to render a verdict for the defendants. The plaintiffs had a perfect right to permit J. G. Terrell to remove his goods from Arkansas into the Indian Territory. The Arkansas mortgage was on stocks of goods owned by J. G. Terrell, and described as being in storehouses in Waldron and Mansfield, in Arkansas; and its record in the Indian Territory would not have operated as a mortgage on a stock of goods belonging to E. Terrell & Co., or as a security for the plaintiffs' debt, and would therefore have been a useless and vain act. It is said that the plaintiffs, by not putting the mortgage on record in the Indian Territory, thereby

concealed the same, and enabled Terrell & Co. to contract debts upon the presumption that the goods were unincumbered. But there was no concealment of an incumbrance on the goods in the Indian Territory, because there was no incumbrance on the goods in that territory prior to the execution of the mortgage under which the plaintiffs claim, which was placed on record the day following its execution. As the plaintiffs could gain nothing by recording the Arkansas mortgage in the Indian Territory, and as they could not and do not claim the goods under that mortgage, we do not think there was any legal or moral obligation resting on them to have that mortgage recorded in the Indian Territory merely for the information of Terrell & Co.'s other creditors. That mortgage remained of record in Arkansas unsatisfied, and thus the defendants and all other persons had legal constructive notice of its existence all the time at the only place its record could have any legal effect. By the use of the words "if unexplained" in this instruction, the jury were told, in effect, that the burden of proof rested on the plaintiffs to show that an act which in itself was perfectly lawful and innocent was not done for a fraudulent purpose, or in furtherance of a fraudulent scheme. But an act which in itself is lawful and innocent is never presumed to be fraudulent, and the burden rests on the party assailing it as fraudulent to prove it. Moreover, there is no evidence in the record tending in the slightest degree to show that the plaintiffs omitted to record the Arkansas mortgage in the Indian Territory for any fraudulent purpose, and any instruction based on the assumption that there was such evidence would have been erroneous.

The defendants offered, and the court, over the objection of the plaintiffs, admitted in evidence, statements made by Terrell & Co. to some of their creditors touching their financial condition. There was no error in admitting these statements. They were competent evidence against Terrell & Co. for whatever they tended to prove, but they were not evidence against the plaintiffs, and could not affect their rights, unless it was shown they had knowledge of them, and were in some manner connected with them for the fraudulent purpose alleged. Brittain v. Crowther, 4 C. C. A. 341, 54 Fed. 295. No such showing was made. There is not a syllable of evidence or a single circumstance in the case tending in the remotest degree to show the plaintiffs knew that any such statements had ever been made, or that they had any connection whatever with them. The plaintiffs requested the court to instruct the jury that if the plaintiffs were in no manner parties to or connected with these statements, and had no knowledge of them, their rights were not affected thereby. The court gave the instruction, with this qualification:

"Unless you should further find from the evidence that there was a secret or tacit agreement between them to conceal the true condition of E. Terrell & Co., and thus enable them to procure a greater amount of credit than they could otherwise procure."

As there was a total lack of evidence tending to show, or from which the jury could rightfully infer, any such "secret or tacit" agreement, it was error to qualify the plaintiffs' request as was done.

The defendants introduced in evidence the following correspondence:

"St. Joseph, Mo., Feb. 1, 1894.

"J. Foster & Co., Fort Smith, Ark.—Dear Sir: Will you kindly give us, in confidence, such information as you may have regarding the credit, promptness, and financial standing of E. Terrell & Co., Wagoner, Indian Territory? Please answer upon this sheet, and oblige,

"Yours truly,                          Tootle, Wheeler & Motter,
                                "Successors to Tootle. Hosea & Co."

"Gentlemen: We are selling Messrs. E. Terrell & Co., and find them reasonably prompt. Think they are good for what they want.

"Truly,                                      J. Foster & Co."

The court gave the following instruction relating to this correspondence:

"The failure of J. Foster & Co. to disclose to Tootle, Wheeler & Motter, when they made inquiry as to the financial standing of E. Terrell & Co., that they held a mortgage, recorded in Arkansas, upon the property in the Indian Territory, with an agreement from E. Terrell & Co. to give a mortgage in the Indian Territory upon this property whenever demanded by them, is a badge of fraud, and, unless it has been explained to your satisfaction by the evidence in this case, would justify you in finding for the defendants."

And after 24 hours' deliberation the jury were brought into court and instructed as follows:

"If you find from the evidence that J. Foster had of record in Arkansas a mortgage upon the stock of goods and merchandise of J. G. Terrell; and if you further find that the said J. Foster & Co. agreed that the said J. G. Terrell might carry said stock of goods and merchandise to the Indian Territory, and expose them for sale under the firm name of E. Terrell & Co., and that the said J. G. Terrell and E. Terrell & Co. agreed with the said J. Foster & Co. that, whenever demanded by said J. Foster & 'Co., the firm of E. Terrell & Co. would give to them a mortgage covering the stock of goods in the Indian Territory; and if you further find that, when J. Foster & Co. made reply to the inquiry of Tootle, Wheeler & Motter as to the financial standing of E. Terrell & Co., the said J. Foster & Co. did not disclose that they held the mortgage recorded in Arkansas, and an agreement for a new mortgage from E. Terrell & Co. whenever demanded; and if you find that, had J. Foster & Co. made disclosure of these facts to Tootle, Wheeler & Motter, the firm of Tootle, Wheeler & Motter would not have sold the goods which they did sell to E. Terrell & Co.,—then you should find for the defendant."

As these instructions cover in part the same ground, they will be considered together. It will conduce to a clearer understanding of so much of these instructions as relate to the plaintiffs' answer to Tootle, Wheeler & Motter's letter of inquiry to set out all the testimony relating to that subject, as it is brief:

"Defendants proved by Tootle, Wheeler & Motter that, had they been advised that E. Terrell had a chattel mortgage on their stock of goods, they could not have gotten any goods from them on credit, and that Tootle, Wheeler & Motter relied greatly on the information furnished them by J. Foster & Co. in extending the line of credit to E. Terrell & Co. which they did;" and the plaintiffs proved "that about the 1st of February, 1894 [the date of the letters], E. Terrell & Co. were solvent and sufficient to pay all of their debts, and that after that time they lost about $5,000 in cotton speculations, and that a few days before they made the mortgage of January 28, 1895, to plaintiffs, they paid Tootle, Wheeler & Motter on account the sum of $300."

The instructions must be considered in the light of this testimony. The matters embraced in these charges will be considered in their order.

The plaintiffs were under no obligation, in answering the letter of Tootle, Wheeler & Motter, to disclose the fact of the existence of the Arkansas mortgage. That mortgage was duly recorded in the proper recorder's office of that state, and Tootle, Wheeler & Motter and all other persons were bound to take notice of its existence; and, in contemplation of law, they had such notice. Moreover, it will be observed that this letter was written more than six months after the goods had been removed into the Indian Territory, and the Arkansas mortgage abandoned as a security. Nor were the plaintiffs bound to disclose the fact that Terrell & Co. had promised to give them a mortgage to secure their debt whenever demanded. Merchants and business men are not required, in answering general letters of inquiry "regarding the credit, promptness, and financial standing" of a named person, to disclose their business relations or the state of their accounts with such person. No such information was called for by the letter of Tootle, Wheeler & Motter, and they had no right or reason to expect it. The supreme court of Michigan, in First Nat. Bank v. Marshall & Ilsley Bank, 65 N. W. 604, said:

"It is insisted that it was the duty of the plaintiffs, in replying to the letter of the defendant inquiring as to the character and financial standing of Mr. Hale, to state the indebtedness of Mr. Hale to it. No statement of liabilities was called for, but only his character and financial standing as a business man. Banks, as well as individuals, frequently write for information of this character. When an inquiry comes to such bank asking simply for the character and financial standing of the merchant, the bank is not bound, at its peril, to report any loans which said merchant may have at its bank."

It will be observed that, by the terms of the instructions we are considering, the plaintiffs are held responsible, not for what they did say in their letter, but for not saying something the court erroneously held they should have said. If the statements contained in the plaintiffs' answer to Tootle, Wheeler & Motter's letter were made in good faith, and true so far as they then knew and believed, they imposed no liability on the plaintiffs, and cannot affect the validity of the mortgage taken months afterwards. Confessedly, the testimony, all of which we have set out, would not support a finding that the plaintiffs purposely and intentionally misrepresented the business standing and credit of Terrell & Co., with the view and intention of inducing Tootle, Wheeler & Motter to sell them goods, in the hope and expectation that they might profit thereby. But however this may be, the court did not leave that question to the jury, as it should have done if there had been any testimony justifying its submission.

The understanding that Terrell & Co., when required to do so, would give the plaintiffs a mortgage on the goods in the Indian Territory, did not, of itself, render the mortgage fraudulent and void in law. Smith v. Craft, 123 U. S. 436.[1] As bona fide creditors of Terrell & Co., they had a right at all times, independent of any previous understanding to that effect, to demand of Terrell & Co. such security for their debt, and Terrell & Co. had an undoubted right to give it.

[1] 8 Sup. Ct. 196, 31 L. Ed. 267.

These being the unquestioned legal rights of the parties, upon what principle can it be said to be a legal fraud, or a badge of fraud, for the parties to stipulate in advance for doing that which they would be perfectly free to do, and which it would be perfectly legal for them to do, independent of such stipulation? Why should a mortgage which the creditors had a legal right to demand, and the debtor good right to give, be held void because the parties had previously agreed that such security should be given when demanded? There is no such rule of law. It is everyday practice for debtors to promise to give their creditors security when demanded, and while such a promise affords slight protection to the creditor, and cannot be specifically enforced, when it is voluntarily complied with the security is not thereby invalidated. Bank v. Whitmore, 104 N. Y. 297, 10 N. E. 524; Day v. Goodbar, 69 Miss. 689, 12 South. 30; Teitig v. Boesman, 12 Mont. 450, 31 Pac. 371, 384; Blanks v. Klein, 3 C. C. A. 588, 53 Fed. 436; Anderson v. Lachs, 59 Miss. 115. Such an agreement, like all agreements that men are capable of entering into, may be made under circumstances and for purposes that will render it fraudulent in fact. But the court did not submit to the jury the question whether this agreement was entered into for a fraudulent purpose, and was fraudulent in fact. Presumably, this was not done because the court took the view that the understanding or agreement was fraudulent in law; and, besides, it would have been error to submit the question of fact to the jury, for the reason that there was a total absence of testimony tending in the slightest degree to show that this understanding was had with the view of deceiving or defrauding the other creditors of Terrell & Co., or for any purpose other than the protection of the plaintiffs by giving them the same security for their debt which they had while the property remained in Arkansas.

We have seen that the law did not impose on the plaintiffs, in answering Tootle, Wheeler & Motter's letter, the obligation to disclose the facts enumerated in the court's final charge. This being so, it was clearly erroneous to tell the jury that if they found Tootle, Wheeler & Motter would not have sold the goods they did sell to Terrell & Co., had they known all these facts, they would find for the defendant. What Tootle, Wheeler & Motter would or would not have done, had they known all about the financial condition and prospects of Terrell & Co., cannot be admitted to prejudice the plaintiffs, if they had done no wrong and committed no fraud. It will be observed that in this, as in the other instructions, no mention is made of the motive or intent with which these acts were done, but the acts are treated as fraudulent in law, irrespective of the intent with which they were done. Many innocent and lawful or indifferent acts are linked together, apparently on the assumption that their aggregation would impart to them an odious quality, which separately they did not possess. But the law will not deduce fraud from any number of lawful and innocent acts. One who seeks to attach a fraudulent character to such acts must go further, and show they were in fact done with a fraudulent intent and for a fraudulent purpose; and whether they are so done or not is a question

of fact, which must be submitted to the jury when there is evidence justifying its submission. The transaction between the plaintiffs and Terrell & Co. which is assailed was perfectly consistent with honesty and good intentions, and, in the absence of proof to the contrary, the law presumes it was of that character. Mere suspicion, unsupported by evidence, cannot be allowed to deprive a creditor of his legal rights; and fraud cannot be inferred either by the court or jury from acts legal in themselves, and consistent with an honest purpose. The settled rule on this subject is that slight circumstances, or circumstances of an equivocal tendency, or circumstances of mere suspicion, leading to no certain results, are not sufficient to establish fraud. They must not be, when taken together and aggregated,—when interlinked and put in proper relation to each other,—consistent with an honest intent. If they are, the proof of fraud is wanting. Bank v. Frank, 63 Ark. 16, 37 S. W. 400, 58 Am. St. Rep. 65; Shultz v. Hoagland, 85 N. Y. 464.

Several requests preferred by the defendants and given by the court are prefaced with the statement that "a secret trust between parties is a badge of fraud," and "secrecy is a badge of fraud." These opening statements are followed by a recital of what the parties did, and conclude with the declaration that if these actions have not "been explained," or have not been explained to the satisfaction of the jury, they would find for the defendant. The frame of these charges is extremely objectionable, because of their misleading tendency under the proof in the case. There was no evidence of "a secret trust," or that the plaintiffs concealed any fact they were under legal obligations to make public. These instructions are infected with the same vice as those we have considered. They declare innocent acts to be badges of fraud, which, if unexplained by the plaintiffs, would authorize the jury to find a verdict for the defendants. Secrecy or haste in a business transaction, or the fact that it took place out of business hours, are spoken of in the books as badges of fraud; and these so-called badges of fraud are sometimes brought to the attention of the jury in cases where they have, under the proof, no application, or in a manner that conveys to the jury an entirely erroneous notion of the law applicable to the rights of bona fide creditors; and the same may be said of the statement that a transaction between a debtor and one of his creditors which has the effect to hinder and delay the other creditors of the debtor is a fraudulent and void act as to such other creditors. The statement of these propositions to a jury without the full explanation of the legal rights of a bona fide creditor is necessarily misleading and erroneous. A bona fide creditor has a legal right to demand of his debtor that he pay or secure his debt, and, in the absence of a bankrupt law, a debtor may lawfully pay or secure one of his creditors to the exclusion of all others. The necessary effect of one creditor taking a mortgage on all his debtor's property to secure the payment of his debt is to hinder and delay the other creditors of the debtor in the collection of their debts, because it leaves them nothing out of which to make their debts but the debtor's equity of redemption in the mortgaged property, which is valueless,

except in so far as the property exceeds in value the mortgage debt. But this is not hindering or delaying the debtor's other creditors, in a legal sense; and it is not fraudulent as to them, because the creditor had the legal right to demand security for his debt, and the debtor a legal right to give it, regardless of how other creditors might be affected thereby. It is just what every other creditor would have done if he had been equally diligent, and had had the good fortune to be in like favor with the debtor. The questions in such cases are: Is the mortgage a valid instrument on its face, and was it executed in good faith to secure the payment of a bona fide debt, with no reservation or secret trust for the benefit of the debtor? When these questions can be answered in the affirmative, the mortgage is impervious to attack from any quarter. These are the essential facts to constitute a valid mortgage of property to secure the payment of a bona fide debt, and when they are established it is wholly immaterial whether the transaction was consummated in haste and secretly, or openly and leisurely, or in daylight or in the nighttime. Lawful contracts made in good faith for a lawful purpose may be made at any hour of the day or night, and publicly or secretly, and leisurely or hastily, as best suits the convenience and interest of the parties to them. When a creditor is seeking payment or security for his debt from an insolvent debtor, it is commonly to his interest to act with celerity and secretly. If he made open proclamation of his intended action, it would probably result in some other creditor obtaining the preference. Rice v. Commission Co., 18 C. C. A. 15, 71 Fed. 151; Williams v. Simons, 16 C. C. A. 628, 70 Fed. 40; Repauno Chemical Co. v. Victor Hardware Co., 42 C. C. A. 106, 101 Fed. 948. In Huiskamp v. Wagon Co., 121 U. S. 310, 319, 7 Sup. Ct. 899, 902, 30 L. Ed. 971, the supreme court of the United States say:

"In order to invalidate the mortgage of Rummel to Huiskamp Bros., it must have been made with the intent on the part of Rummel to hinder and delay his other creditors, and Huiskamp Bros. must have accepted it with the intent of assisting Rummel to hinder and delay his other creditors. A debtor being in failing circumstances and having the right to prefer a creditor, if the preferred creditor has a bona fide debt, and takes a mortgage with the intent of securing such debt, and not with the purpose of aiding the debtor to hinder and delay other creditors, the mortgage is valid, even though the mortgagee knows that the debtor is insolvent, and that the debtor's intention is to hinder and delay other creditors."

In a word, the law is that when a mortgage is taken by a bona fide creditor for the purpose of securing his debt, and not for the purpose or with the intent of shielding his debtor and assisting him to hinder and delay his other creditors, the mortgage is valid, although its necessary effect is to hinder and delay other creditors, and to deprive them of all remedy against their debtor's property.

The judgment of the United States court of appeals for the Indian Territory and the judgment of the United States court for the Northern district of the Indian Territory are reversed, and this cause is remanded to the latter court, with instructions to grant a new trial.